S04A0553. JACKSON v. THE STATE.
S04A0733. LAMAR v. THE STATE.
(599 SE2d 129)

HUNSTEIN, Justice.

Lavoris Jackson and his cousin Octavious Lamar were jointly tried and convicted of malice murder, felony murder, aggravated assault, possession of a firearm during the commission of a felony and giving a false name, arising out of the shooting death of Jeffrey Robinson. Jackson and Lamar filed separate motions for new trial and separate notices of appeal.[1] This opinion consolidates these appeals.

1. The jury was authorized to find from the evidence adduced at trial that while Robinson and his cousin Theria Outen were playing cards with two other men at a table located in the stairwell of Outen's apartment, Lamar approached and insisted on changing the game. Lamar and Robinson argued and the confrontation ended with Lamar telling Robinson he would "f*** him up," and threatening that he would ". . . be back. I'm going to call my people and we are going to straighten this." Lamar and Jackson were seen together after Lamar's confrontation with Robinson and prior to the shooting. Soon thereafter, Jackson walked into the apartment complex, spoke with Outen and then disappeared. Lamar arrived just a few minutes later and called out to Robinson. Lamar then threw a beer bottle at Robinson and Robinson hit Lamar inflicting a cut on Lamar's head. While Robinson and Lamar were standing "face to face," Jackson snuck up behind Robinson, placed a gun to the back of Robinson's head and

---

[1] The crimes occurred on December 11, 1999. Appellants were indicted on March 8, 2000 and reindicted on May 2, 2001 in Chatham County. A jury found them guilty on August 10, 2001. They received life sentences for malice murder, 20-year concurrent sentences for aggravated assault, consecutive five-year sentences for possession of a firearm during commission of a felony and concurrent 12-month sentences for the giving of a false name to a police officer. Jackson filed a motion for new trial on August 30, 2001. He subsequently amended it on June 6 and December 11, 2002. Lamar filed his motion for new trial on September 6, 2001, and amended it on June 19, July 1, and November 4 of 2002. Appellants' motions were denied on September 23, 2003. Jackson filed a notice of appeal on September 29, 2003 and amended it on October 31, 2003. The appeal was docketed December 3, 2003 and argued on March 9, 2004. Lamar filed a notice of appeal on October 22, 2003. The appeal was docketed on January 6, 2004 and was argued on May 11, 2004.

pulled the trigger several times. The gun malfunctioned and Robinson ran away. Jackson followed and shot Robinson five times hitting him in the arms and legs. Outen witnessed Lamar run "around the other side [of the building] like to cut [Robinson] off" as Jackson pursued Robinson from the other direction. According to the medical examiner, Robinson died that evening as a result of "massive blood loss which arose from a total of five gunshot wounds to the body." Jackson and Lamar fled immediately after the shooting. They were arrested several weeks later after giving false names to the police. Jackson told the police that he was at a wedding at the time of the shooting. Lamar testified that he was involved in a "bottle throwing" incident but denied being aware of any gunfire or having an earlier altercation with Robinson.

We find the evidence adduced against Jackson sufficient to enable a rational trier of fact to find him guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Likewise, construing the evidence in the light most favorable to uphold the jury's verdict, the evidence adduced against Lamar was sufficient to enable a rational trier of fact to find him guilty beyond a reasonable doubt as a party to the murder, aggravated assault and firearm possession charges. See OCGA § 16-2-20 (b). We have repeatedly held that

> A person need not directly commit a crime to be charged and convicted of that crime, for every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime. A person is concerned in the commission of a crime only if he: . . . (3) intentionally aids or abets in the commission of the crime; or (4) intentionally advises, encourages, hires, counsels, or procures another to commit the crime.

(Citation and punctuation omitted.) *Jordan v. State*, 272 Ga. 395, 396 (1) (530 SE2d 192) (2000). Mere presence at the scene of a crime and mere approval of the criminal act are not sufficient evidence to establish that the defendant was a party to the crime. Id. Proof that the defendant shares a common criminal intent with the actual perpetrator is necessary and "may be inferred from conduct before, during, and after the commission of the crime. [Cit.]" *Sands v. State*, 262 Ga. 367, 368 (2) (418 SE2d 55) (1992). Moreover, evidence of the defendant's conduct before, during, and after the commission of the criminal act will authorize the defendant's conviction for commission of the criminal act if a jury could infer from the conduct that the defendant intentionally encouraged the commission of the criminal act. *Jordan v. State*, supra.

Evidence that Lamar initiated the altercation with Robinson, threatened to bring back "his people," met up with Jackson, returned to the scene only minutes after Jackson, participated in distracting Robinson before the shooting, chased after Robinson after the gun misfired, and subsequently fled, provided sufficient evidence to enable a rational trier of fact to find him guilty beyond a reasonable doubt as a party to the murder, aggravated assault, and firearm possession charges. *Jackson v. Virginia*, supra; *Eckman v. State*, 274 Ga. 63 (1) (548 SE2d 310) (2001).

2. Appellants' convictions for the malice murder of Jeffrey Robinson and possession of a firearm during the commission of Robinson's murder and giving a false name to police after his murder are affirmed. However, the sentences for aggravated assault must be vacated. *Baines v. State*, 276 Ga. 117 (4) (575 SE2d 495) (2003); *Fitzpatrick v. State*, 268 Ga. 423 (1) (489 SE2d 840) (1997).

3. Appellants contend that they are entitled to a new trial because a portion of the trial was conducted outside of their presence. The record reveals that appellants were not present at an in-chambers conference when the court, the prosecutor, and both trial counsel participated in a discussion about entering a nolle prosequi of the aggravated assault with a beer bottle charge pending against Lamar. Although it is undisputed that appellants were not present at the in-chambers conference where the issue was first discussed, the record reflects that they were present during a conversation that took place immediately afterwards where the issue was raised and discussed by counsel and the court. "It is well-established that a defendant has a constitutional right to be present at every stage of the proceedings materially affecting his case, Ga. Const. Art. I, Sec. I, Par. XII, and that the right to be present may be waived if the defendant later acquiesces in the proceedings occurring in his absence. [Cits.]" *Wilson v. State*, 274 Ga. 637, 639 (3) (555 SE2d 725) (2001). Pretermitting whether Jackson had a right to be present at the conference involving an issue directed only to Lamar, we find that appellants acquiesced in the proceedings when their counsel made no objection and appellants thereafter remained silent after the subject was brought to their attention. See id.; *Holsey v. State*, 271 Ga. 856 (5) (524 SE2d 473) (1999).

4. Appellants contend that the trial court erred in denying their motion to excuse the jury array when Juror Brands commented in the presence of the other prospective jurors "while these gentlemen may have allegedly killed somebody, they've definitely ruined my day, so I do believe there's an attitude. If it's not a death penalty case, there's taxpayers' money in jail." The court excused Juror Brands but refused to excuse the other prospective jurors. Relying on *Moore v. State*, 156 Ga. App. 92 (1) (274 SE2d 107) (1980), appellants contend

that Juror Brands's comments required the disqualification of the entire panel, not just Juror Brands. A defendant has a right to a jury that is free from prejudgment or fixed opinion, *Sharpe v. State*, 272 Ga. 684 (5) (531 SE2d 84) (2000), but where a prospective juror's comments do not link a defendant with criminal activity, or characterize the defendant as a criminal, the entire jury panel does not have to be excused. *Roberts v. State*, 259 Ga. 441 (2) (383 SE2d 872) (1989). Furthermore, appellants cannot complain about the failure of the trial court to make inquiry of the remaining prospective jurors about the influence of Juror Brands's remark where they failed to request this undertaking by the court. Id.

5. Appellants assert they were denied effective assistance of counsel based on counsel's decision to request conflicting jury instructions and for failing to object to prejudicial statements made by the prosecutor during closing argument. Jackson complains of his trial counsel's failure to seek to have his trial severed and his failure to request a charge on false swearing by a witness. Lamar contends that his trial counsel was deficient in failing to make an adequate investigation, failing to show the victim had cocaine in his system, failing to object to the introduction of a photograph of the victim in a military uniform, and failing to inform the jury that Lamar was not initially indicted for Robinson's murder. In considering appellants' claims that their counsel's assistance at trial was so defective as to require reversal of their convictions, they must show that trial counsel's performance was deficient and that the deficient performance prejudiced their defense. *Totten v. State*, 276 Ga. 199 (4) (577 SE2d 272) (2003). See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Trial counsel appeared at the hearings on the motions for new trial, testified as to their own effectiveness, and the trial court that witnessed trial counsel's performances made the determination that no basis existed for holding that appellants had been denied effective assistance. See *Love v. State*, 268 Ga. 484 (4) (490 SE2d 88) (1997).

(a) A review of the transcript shows that the comment by the prosecutor about a witness did not constitute the prosecutor's personal opinion regarding the veracity of that witness, see *Johnson v. State*, 271 Ga. 375 (15) (b) (519 SE2d 221) (1999) and the prosecutor's reference to Robinson's children and the characterization of appellants as "thugs" did not impermissibly influence the jury's passions or prejudices or divert the jury from the evidence. *Thomas v. State*, 268 Ga. 135 (14) (485 SE2d 783) (1997). See also *Braithwaite v. State*, 275

Ga. 884 (2) (572 SE2d 612) (2002). We do not agree that the performance of Lamar's attorney was deficient for requesting jury instructions on the defenses of alibi and mere presence.[2] Counsel's testimony reflects his recognition that the testimony of alibi witnesses established that Lamar was at a wedding at the time of the incident, but that other contradictory testimony placed him at the scene before the victim was shot. Decisions as to which charges will be requested and when they will be requested fall within the realm of trial tactics and strategy, and provide no grounds for reversal unless "such tactical decisions are so patently unreasonable that no competent attorney would have chosen them. [Cit.]" *Champion v. State*, 238 Ga. App. 48, 49 (1) (b) (517 SE2d 595) (1999). Here, the tactical decision as to which requests to charge to submit was reasonable and provides no basis for a reversal of Lamar's conviction.

(b) Jackson's trial counsel was not ineffective for failing to move to sever his trial when there was evidence showing that he acted in concert with Lamar. See *Head v. State*, 256 Ga. App. 624, 627 (1) (d) (569 SE2d 548) (2002). Similarly, a review of the testimony in this case does not demand a finding that State's witness Outen wilfully and knowingly testified falsely. See OCGA § 24-9-85 (b); *Fugitt v. State*, 256 Ga. 292 (6) (348 SE2d 451) (1986).

(c) There is no evidence that Lamar's trial counsel failed to make an adequate investigation of the case before trial where his testimony established that he filed several pre-trial motions, contacted and investigated numerous witnesses, reviewed investigatory files and witness interviews and visited the scene. See *Fletcher v. State*, 277 Ga. 795 (5) (596 SE2d 132) (2004). His failure to object to the introduction of a photograph of the victim in his military uniform and his decision not to inform the jury that the State initially indicted Lamar for only aggravated assault were reasonable tactical decisions made about the presentation of evidence and the chosen lines of defense based on discussion with Lamar and the strength of the evidence against him. See *Veasley v. State*, 275 Ga. 516 (5) (570 SE2d 298) (2002). Finally, we note that a ruling on a motion in limine brought by the State precluded Lamar's trial counsel from informing the jury that the victim had cocaine in his system.

Because the record does not support appellants' assertions that their trial counsel performed deficiently or that trial counsel's alleged

---

[2] We note that Jackson never requested a jury instruction on "mere presence" and also failed to support his enumeration by citation to authority or argument. See Supreme Court Rule 22.

deficient performance prejudiced their defense, this enumeration lacks merit. See generally *Morgan v. State*, 275 Ga. 222 (10) (564 SE2d 192) (2002).

*Judgments affirmed in part and vacated in part. All the Justices concur.*

DECIDED JUNE 28, 2004 —
RECONSIDERATION DENIED JULY 29, 2004.

*Martin G. Hilliard*, for appellant (case no. S04A0553).

*Jackson & Schiavone, Steven L. Sparger*, for appellant (case no. S04A0733).

*Spencer Lawton, Jr., District Attorney, Margaret E. Heap, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Andrette Watson, Assistant Attorney General*, for appellee.