### S07A0157. THOMAS v. THE STATE.
(640 SE2d 255)

SEARS, Chief Justice.

The appellant, Shaun Thomas, appeals from his conviction for the malice murder of his ten-month-old daughter, Asia Wheeler, and for four counts of cruelty to children.[1] On appeal, he contends that the

---

* In his voluntary petition Quay sought imposition of an 18-month suspension of his license to practice law in Georgia.

[1] The crimes occurred on February 7, 2002, and Thomas was indicted on August 15, 2003, for malice murder; for four counts of aggravated assault; and four counts of cruelty to children

trial court erred in permitting the State to introduce post-autopsy photographs; that the evidence is insufficient to support his convictions; and that the trial court erred in permitting the State to cross-examine him on the ultimate issue in the case. Finding no merit to these contentions, we affirm Thomas's convictions.

1. In January 2002, Thomas moved into the same house as the victim and her mother, Eda Wheeler. On February 7, 2002, Eda Wheeler woke up around 6:00 a.m. She testified that, before she left for work, she kissed the victim goodbye and did not notice anything unusual about the victim, who was acting normally. After Eda Wheeler left for work, the victim was alone with Thomas. Around 7:30 a.m., Thomas called 911, and an officer responded to the house. According to the officer, the victim was having trouble breathing and did not respond to any stimulation. Thomas told the officer that the victim had been sleeping and had fallen off the bed. The bed was less than two feet off the floor, which was carpeted. The officer noticed a scar on the victim's neck and chest, but did not see any outward injuries. An ambulance took the victim to the hospital. The victim was having seizures when she arrived, and a CT-scan showed both old and new bleeding inside the skull. Dr. Murphy, who treated the victim, testified that the victim had a wound to her forehead that was healing, retinal hemorrhages in both eyes, an old rib fracture, and older subdural hematomas. The doctor testified that these injuries were not consistent with a fall from the bed. The victim later died from her injuries.

The medical examiner testified that the victim's scalp showed bleeding and that there were subdural hematomas. The victim's brain was also torn and lacerated on the right side, and the victim had a bruise on her cheek that was consistent with being hit. The medical examiner also testified that the victim's adrenal gland was grossly

in the first degree. As for the aggravated assault and cruelty to children counts, the indictment alleged that two counts of the aggravated assaults and two counts of cruelty to children occurred on February 7, 2002, and that the other counts occurred on or between January 1, 2002, and February 1, 2002, the exact date being unknown to the grand jurors. On August 28, 2003, a jury found Thomas guilty on all counts. On that same day, the trial court sentenced Thomas to life in prison for malice murder, and the felony murder conviction, for which aggravated assault served as the underlying felony, was vacated as a matter of law. The trial court merged the aggravated assault convictions with the convictions for cruelty to children, and sentenced Thomas to consecutive terms in prison for the four convictions for cruelty to children. On September 8, 2003, Thomas filed a motion for new trial, and on September 16, 2005, he filed an amended motion for new trial. The trial court denied the motion for new trial, as amended, on September 20, 2005. On September 27, 2005, Thomas filed a notice of appeal, and on April 26, 2006, the appeal was docketed in this Court. However, on June 12, 2006, because the record did not contain the sentence or the transcript of the trial, this Court remanded the case to the trial court for perfection of the record. On June 30, 2006, a new notice of appeal was filed, and on September 26, 2006, the case was again docketed in this Court. The appeal was submitted for decision on briefs.

swollen from a blow to the right side of the body, and that the injury occurred about a week before her death. She added that a laceration to the victim's liver occurred on the day of her death, as did a blow to the abdomen that caused a pooling of blood there. The medical examiner added that the victim suffered from hemorrhaging in the optic nerves of the left and right eyes, and that only a severe head injury could cause that hemorrhaging. According to the medical examiner, the victim had suffered numerous injuries within several weeks of her death, including a broken arm, a rib fracture, and internal bleeding in the abdomen. The medical examiner stated that the cause of death was extensive swelling of the brain, and that the victim's injuries were not consistent with a fall from a bed.

A child care provider, Carletta Shaw, who took care of the victim when Eda Wheeler worked, testified that the victim did not have any injuries before Thomas moved in with Eda Wheeler; that, after Thomas moved in, she started to see bruises on the victim's head; and that, a few days before the victim's death, she noticed the victim crawling awkwardly and crying in pain.

Thomas testified that, on the morning of February 7, the victim fell out of bed and began to cry; that he picked her up; that shortly thereafter she had a seizure; and that he then called 911.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that the evidence was sufficient to authorize a rational trier of fact to find Thomas guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. Thomas contends that the trial court erred in permitting the State to introduce post-autopsy photographs of the victim. We disagree.

A post-autopsy photograph of a victim's body "is only admissible to show a material fact that became apparent solely because of the autopsy."[3] "Thus, for example, when a fatal internal injury is not revealed until an autopsy is performed, a post-autopsy photograph is admissible in order to assist the jury's understanding of the circumstances surrounding the victim's death."[4] In the present case, the post-autopsy photographs were relevant to assist the jury in understanding the internal injuries suffered by the victim and to understand the cause of death. The trial court thus did not err in admitting the photographs.

3. Thomas contends that his right to due process was violated when the State examined Thomas on the ultimate issue in the case.

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *McClure v. State*, 278 Ga. 411, 412 (603 SE2d 224) (2004).

[4] Id.

On cross-examination of Thomas, the State asked him if the victim was murdered. Thomas's objection was sustained. The State then asked Thomas the following question: "We know someone killed her, and it wasn't an accident, right?" The trial court overruled Thomas's objection to this question, and Thomas answered "yes."

Thomas contends that asking him whether the death was accidental improperly asked him to give his opinion on the ultimate issue in the case. We conclude, however, that, even if the trial court erred in permitting the question, the error was harmless, as there was overwhelming evidence that the victim's injuries were not accidental.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 22, 2007.

*Zell & Zell, Rodney S. Zell*, for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General*, for appellee.