## S12A0847. ZAMORA v. THE STATE.
(731 SE2d 658)

NAHMIAS, Justice.

Appellant Horatio Zamora was convicted of malice murder and first-degree cruelty to children in connection with the death of 19-month-old Jonathan Castillo.[1] Appellant contends that the evidence at his trial was insufficient to prove him guilty, that the trial court erred in admitting certain evidence, that his trial counsel provided ineffective assistance, and that his right to be present during trial was violated by the dismissal of a juror as a result of bench conferences in which Appellant did not participate. We affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence presented at Appellant's trial showed the following. Appellant and his girlfriend, Marisela Mendez, lived together in a trailer in Franklin County, along with her father, Francisco Mendez, and her son, Jonathan. On March 31, 2009, Mr. Mendez went to work, and Ms. Mendez and Appellant spent the morning and early afternoon playing with the toddler, changing his diaper, and cooking. During that time, Jonathan did not act strange or hurt. Around 3:00 or 4:00 p.m., Ms. Mendez went to work, leaving Appellant home alone with the child. Mr. Mendez and Ms. Mendez returned home separately late that night. Ms. Mendez saw Jonathan asleep in his bed, and she went to sleep.

The following morning, Ms. Mendez woke to find Appellant awake earlier than usual; he was trying to wake up Jonathan, which was also unusual for him. When Ms. Mendez saw that her son was not responding, she rushed over to him, realized he was not breathing, and began to cry, waking up Mr. Mendez. As Ms. Mendez called 911, Appellant changed his clothes and fled the trailer. He was gone before the paramedics arrived and determined that Jonathan was dead. Appellant drove to a friend's house and, without mentioning the events·of that morning, asked for a ride to a bus station in Atlanta. Appellant, who had no luggage, told his friend that he was going to

---

[1] The crimes occurred on the night of March 31-April 1, 2009. On June 8, 2009, Appellant was indicted for malice murder, felony murder (with aggravated assault as the underlying felony), aggravated assault, and cruelty to children in the first degree. At trial, the jury found Appellant guilty on all counts on February 24, 2010. The next day, the trial court sentenced Appellant to life in prison for malice murder and 20 consecutive years for child cruelty. The felony murder conviction was vacated by operation of law, and the aggravated assault conviction merged with the conviction for malice murder. Appellant's motion for new trial was denied by the trial court on November 9, 2011. Appellant filed a timely notice of appeal to the Court of Appeals, which transferred the case to this Court on January 20, 2012. The case was docketed for the April 2012 term and submitted for decision on the briefs.

Mexico for three to four weeks to look for work. He was arrested at the bus station later that morning.

Dr. Lora Darrisaw, Deputy Chief Medical Examiner for the Georgia Bureau of Investigation, performed an autopsy on Jonathan. At trial, she testified that she observed small bruises on the child's face, back, right arm, left hand, and left leg. After shaving his head, she was also able to see a small bruise and an abrasion on his scalp. An x-ray showed that Jonathan's forearms had been broken before he was killed. Dr. Darrisaw testified that the fractures in his left forearm were three to four weeks old when he died, and the fractures in his right forearm were one to two weeks old. Dr. Darrisaw's internal examination revealed severe injuries to the child's brain that resulted in substantial internal bleeding and swelling. She concluded that Jonathan's death was a homicide caused by blunt force head trauma, which could not have occurred during the normal activities of a toddler. According to Dr. Darrisaw, the injuries may have resulted in his death within an hour or two, or it could have taken longer. She added that, between suffering the injuries and dying, the child would have continued breathing and could have appeared to be sleeping normally.

2. Appellant argues that the evidence was insufficient to support the jury's verdict because the State presented only circumstantial evidence and did not exclude all reasonable hypotheses except that of his guilt, as required by OCGA § 24-4-6.[2] In particular, Appellant contends that the evidence left open the possibility that some other person caused the victim's fatal injuries.

> "[Q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence[,] and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law."

*Crouch v. State*, 279 Ga. 879, 880 (622 SE2d 818) (2005) (citation omitted). Construed in the light most favorable to the verdict, the evidence established that the child victim appeared healthy before

---

[2] OCGA § 24-4-6 provides:
   To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt but shall exclude every other reasonable hypothesis save that of the guilt of the accused.

being left alone with Appellant for several hours during the afternoon and evening before the morning on which the victim was found dead as a result of head trauma, which was not caused by the toddler's normal activities. That morning, Appellant was observed awake early, trying to awaken the victim, which was unusual. And in contrast to the reaction of Ms. Mendez, who sought emergency medical treatment for the child, Appellant quickly left the home and attempted to flee to Mexico. Finally, there was no evidence implicating either Ms. Mendez or her father in the crimes. Thus, the evidence, while not overwhelming, was sufficient to authorize a rational jury to find that the State had excluded every reasonable hypothesis other than Appellant's guilt and to find him guilty beyond a reasonable doubt of the crimes for which he was convicted. See OCGA § 24-4-6; *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

3. Appellant challenges the admission into evidence of the victim's pre-incision and post-incision autopsy photographs, arguing that the photos had no probative value and served solely to inflame the passions of the jurors. Appellant concedes, however, that he failed to object to the admission of this evidence at trial. He has therefore waived his right to raise this issue on appeal. See *Brooks v. State*, 281 Ga. 514, 516 (640 SE2d 280) (2007).

Even if the claim were not waived, it would fail. The pre-incision autopsy photographs of the victim were relevant and admissible because they depicted the location and nature of his external injuries. See *Johnson v. State*, 289 Ga. 106, 107-108 (709 SE2d 768) (2011). Similarly, the post-incision photos were admissible because, according to the medical examiner, they depicted bleeding and swelling in the victim's brain that were not apparent from an external examination. See *Smith v. State*, 283 Ga. 237, 241 (657 SE2d 523) (2008) (" '[P]ost-incision autopsy photographs are admissible if necessary to show some material fact that becomes apparent only due to the autopsy.' " (citation omitted)). Accordingly, the trial court did not abuse its discretion by admitting the photographs. See *Thomas v. State*, 281 Ga. 550, 552 (640 SE2d 255) (2007) (finding autopsy photos admissible to assist the jury in understanding the internal injuries suffered by a child victim).

4. Appellant contends that the trial court erred in allowing the jury to consider a bus ticket to Mexico that the police seized from him when he was arrested at the bus station in Atlanta, because the State never formally tendered the ticket for admission into evidence. Again,

however, Appellant did not raise this issue during the trial and therefore is barred from raising it on appeal. See *Brooks*, 281 Ga. at 516.

Moreover, even assuming that the trial court erred in allowing the bus ticket into the record, the error was harmless. The jury learned from unchallenged evidence that Appellant fled the crime scene before the paramedics arrived, went to a friend's house, told the friend he planned to travel to Mexico for several weeks, and asked the friend to give him a ride to the bus station in Atlanta. The friend did so, and Appellant was arrested at the bus station. Given this clear evidence of attempted flight to Mexico, it is highly probable that any error involving the bus ticket did not contribute to the jury's verdict. See *Lindsey v. State*, 282 Ga. 447, 450 (651 SE2d 66) (2007) ("The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict.").

5. Appellant argues that the State improperly withheld evidence. Specifically, he contends that the prosecutor should have provided him with a recording and transcript of Ms. Mendez's 911 call, as well as additional photographs of the victim by the medical examiner, even though none of this material was offered into evidence at trial.[3] Georgia's criminal discovery statute requires the prosecution to permit the defense to inspect and copy documents, photographs, recordings, and other materials that are "intended for use . . . as evidence in the prosecutor's case-in-chief or rebuttal at the trial." OCGA § 17-16-4 (a) (3) (A). The State did not seek to admit at trial a recording or transcript of Ms. Mendez's 911 call or any undisclosed autopsy photographs, and thus, assuming such materials exist, the State was not statutorily required to provide them to the defense.

Moreover, to the extent that Appellant is arguing that the alleged recording, transcript, and photographs constituted material exculpatory information that the State failed to provide to the defense in violation of constitutional requirements, see *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), Appellant was required to show, among other things,

> that the allegedly-suppressed evidence was material to the defense. " 'The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' "

---

[3] The record does not demonstrate that a recording or transcript of the 911 call exists. As for additional autopsy photos, Appellant relies on Dr. Darrisaw's testimony, while explaining the extent of the victim's head wounds during cross-examination, that she had "the whole autopsy that I did, and you guys weren't presented with all the pictures. We have more than a hundred plus pictures on this case." However, no such photos are in the record.

*Humphrey v. Lewis*, 291 Ga. 202, 204-205 (728 SE2d 603) (2012) (citations omitted). Appellant made no such showing, and thus any *Brady* claim also fails.

6. Appellant argues that his trial counsel provided constitutionally ineffective representation because the lawyer made many "small errors" during the trial, which Appellant claims prejudiced his defense. Appellant lists these alleged errors in a chart but fails to support all but one of them with argument or citation of authority. We will not consider such bare-bones claims. See Supreme Court Rule 22 ("Any enumerated error not supported by argument or citation of authority in the brief shall be deemed abandoned."); *Hall v. Terrell*, 285 Ga. 448, 457 (679 SE2d 17) (2009).

The one ineffective assistance claim that Appellant does sufficiently argue is that his trial counsel failed to adequately investigate the case, in particular by failing to investigate whether another member of the victim's household caused the victim's broken arms.

To prevail on a claim of ineffective assistance of counsel, Appellant

> must show that his trial counsel provided deficient performance and that, but for that unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. In examining an ineffectiveness claim, a court need not "address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."

*Watkins v. State*, 289 Ga. 359, 362 (711 SE2d 655) (2011) (citations omitted). To show prejudice, the defendant is "required to offer 'more than mere speculation' " that, absent the counsel's alleged errors, a different result probably would have occurred at trial. *Dickens v. State*, 280 Ga. 320, 323 (627 SE2d 587) (2005) (citation omitted).

At the motion for new trial hearing, Appellant offered no evidence whatsoever to prove that if trial counsel had conducted more investigation, he would have discovered evidence favorable to the defense. In particular, Appellant offered no evidence to support the theory that further investigation would have revealed that the victim's mother or grandfather broke the victim's arms in the weeks before he was killed, much less that one of them later caused Jonathan's death. Accordingly, Appellant failed to show that his trial

counsel's performance prejudiced his defense, and the trial court correctly denied this ineffective assistance claim.

7. (a) During voir dire, when asked if he had ever been arrested, a venireman named Whitfield disclosed only that he had a ten-year-old DUI arrest; he was later selected as a juror. At the end of the second day of trial, the trial court advised the prosecutor and Appellant's counsel at a bench conference that the court had just learned from the clerk of court that Juror Whitfield had left a voice message before jury selection on an answering machine in the clerk's office, which said that he was on probation as a felony first offender. The trial court asked the attorneys if they would like to address the issue the next morning, and they said that they would. Appellant was present in court but did not participate in this bench conference, the purpose of which was not explained by the judge in open court.

The next morning, the court held another bench conference with the prosecutor and defense counsel to address what to do about Juror Whitfield. Appellant's counsel expressed concern that the juror might not "review the facts of the case honestly" because he had lied during jury selection. The prosecutor agreed. In order "to draw the least attention to [the issue] as possible," the court proposed that Juror Whitfield be permitted to sit on the jury until the close of the evidence later that day, at which point the court would discretely dismiss him and seat the alternate juror. The court asked counsel whether they had any objections to this approach; neither did. Again, Appellant was present in court for this bench conference but did not participate in it, and the judge did not express the purpose of it in open court.

After the close of the evidence later that day, with the other jurors on a break, the court called Juror Whitfield into the courtroom. During a third bench conference with counsel, Juror Whitfield was excused; he then gave his juror badge to a court employee and left the courtroom. The court asked Appellant's counsel if that action was satisfactory, and counsel replied that it was. Appellant once again was in the courtroom but did not participate in the bench conference, the purpose of which was not expressed. Right after the bench conference, the rest of the jury returned to the courtroom, and the court explained that Juror Whitfield had been dismissed and the alternate would now be the twelfth juror. The court did not explain the reason for Juror Whitfield's dismissal.

(b) Appellant contends that the discussion of dismissing a juror, and the ultimate removal of the juror, during these bench conferences violated his right under the Georgia Constitution to be present during all critical stages of the criminal proceeding against him. Since the earliest years of this Court, we have held that the Georgia Constitution guarantees criminal defendants "the right to be present,

and see and hear, all the proceedings which are had against him on the trial before the Court." *Wade v. State*, 12 Ga. 25, 29 (1852). Accord *Pennie v. State*, 271 Ga. 419, 421 (520 SE2d 448) (1999).

It also has long been established that "[p]roceedings at which the jury composition is selected or changed are . . . critical stage[s] at which the defendant is entitled to be present." *Sammons v. State*, 279 Ga. 386, 387 (612 SE2d 785) (2005). See also *Pennie*, 271 Ga. at 421 ("[W]here the accused is involuntarily absent from the proceedings, the trial judge should have no communications with a juror about the case, except as to matters relating to the comfort and convenience of the jury."); *Miller v. State*, 13 Ga. App. 440, 443 (79 SE 232) (1913) (explaining that a trial court's communications with the jury "should be restricted, in the absence of the accused and his counsel, to matters relating to the comfort and convenience of the jury"). Accordingly, Appellant clearly had a constitutional right to be present during the proceedings at which one of the jurors trying his case was removed. See *Ward v. State*, 288 Ga. 641, 646 (706 SE2d 430) (2011) (holding that the defendants had the right to be present when the court dismissed a juror); *Sammons*, 279 Ga. at 387 (same); *Brooks v. State*, 271 Ga. 456, 456-457 (519 SE2d 907) (1999) (holding that the defendant had the right to be present at in-chambers conferences at which jurors were struck for cause and peremptorily); *Pennie*, 271 Ga. at 420-421 (holding that the defendant had the right to be present when the court questioned a juror about whether he should be removed). Compare *Parks v. State*, 275 Ga. 320 (565 SE2d 447) (2002) (holding that a defendant's right to be present does not extend to bench conferences on "legal" and "scheduling" issues in which defense counsel participated and to which the defendant could not have made a meaningful contribution, particularly where counsel advised that he was apprising the defendant of the subjects of the bench conferences).

It is true that Appellant was in the courtroom during the bench conferences at which Juror Whitfield was discussed and dismissed. But Appellant did not "see *and hear*" those proceedings, *Wade*, 12 Ga. at 29 (emphasis added), and thus he was not "present" in the sense our case law uses that word. The colloquies between the court, counsel, and the juror might as well have been in chambers, as occurred (improperly) in *Sammons*, see 279 Ga. at 387, and *Pennie*, see 271 Ga. at 420-421. The State asserts that the discussions of the juror occurred in "open court." But this assertion is belied by the trial transcript, which indicates that the discussions occurred "on the side" in "bench conferences."

(c) Our conclusion that Appellant had a right to hear what was said during the bench conferences does not end the analysis, however. A defendant

> may personally waive his right to be present at a stage in the trial, or counsel may waive this right for the defendant. But "in order for the waiver of counsel to be binding on the defendant, it must be made in his presence or by his express authority, or be subsequently acquiesced in by him."

*Pennie*, 271 Ga. at 421 (citation omitted). It is clear that Appellant did not personally waive his right to be present during the bench conferences, and trial counsel did not waive Appellant's right to be present in his presence or with his express authority.

The question of Appellant's acquiescence in not participating in the bench conferences is close, if we consider only what happened *at trial*. Appellant was in the courtroom, and we may presume that he watched the three bench conferences from the defense table and observed Juror Whitfield turn in his badge and leave the courtroom during the final bench conference. He also presumably heard the trial court inform the jury just after the final bench conference that Juror Whitfield had been excused and that the alternate would now serve as the twelfth juror. On the other hand, nothing in what we may presume could be observed or heard from the defense table would have informed Appellant of the reason for Juror Whitfield's removal. Whether these circumstances show Appellant's acquiescence in what occurred in his absence is uncertain. Compare *Ward*, 288 Ga. at 646 (explaining that acquiescence " 'means a tacit consent to acts or conditions, and implies a knowledge of those things which are acquiesced in,' " and holding that because the defendants "were not informed of the . . . excusal of the juror, they could not knowingly acquiesce" (citation omitted)), with *Jackson v. State*, 278 Ga. 235, 237 (599 SE2d 129) (2004) (holding that the defendants "acquiesced in the proceedings [occurring in their absence] when their counsel made no objection and [the defendants] thereafter remained silent after the subject was brought to their attention").

But we need not decide that question to resolve this case, because at the motion for new trial hearing, in Appellant's presence, his new appellate counsel and the prosecutor both asked his trial counsel to read relevant parts of the trial transcript regarding Juror Whitfield, and they questioned trial counsel about the juror's status as a felony first offender and his removal from the jury. Appellant's new counsel and the prosecutor did not focus on the juror's dishonest answer during voir dire, but Appellant knew at a minimum by that point —

if not earlier from conversations with his trial counsel or new counsel or review of the trial transcript — that Juror Whitfield's removal had been discussed during the trial in Appellant's absence and resulted from the court, the prosecutor, and trial counsel learning that Juror Whitfield was a felony first offender.

Despite this knowledge, Appellant did not voice any objection to the trial court, directly or through his new counsel, regarding his absence from that portion of the trial. Instead, the first time Appellant contended that his right to be present was violated was in his appeal brief in this Court. Under these circumstances, we conclude that Appellant acquiesced in the limited trial proceedings that occurred in his absence. See *Jackson*, 278 Ga. at 235 (holding that the defendants "acquiesced in the proceedings [occurring in their absence] when their counsel made no objection and [the defendants] thereafter remained silent after the subject was brought to their attention"). Compare *Sammons*, 279 Ga. at 388 (holding that the defendant did not "acquiesce in the illegal proceedings in her absence and repudiated trial counsel's apparent silent waiver of her rights at the first opportunity — the motion for new trial hearing when she was represented by new counsel"); *Pennie*, 271 Ga. at 423 (holding that, when the defendant only learned after trial about an in-chambers conference conducted in her absence, during which the removal of a juror was discussed, there was no acquiescence because she raised the issue at the first opportunity on motion for new trial).[4]

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 10, 2012.

*Davison & Davison, F. Mayes Davison*, for appellant.

*Robert W. Lavender, District Attorney, Adam C. Schroeder, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine L. Iannuzzi, Assistant Attorney General*, for appellee.

---

[4] It is worth noting that, while Appellant would not have been required to show actual prejudice had he properly asserted his right to be present in this direct appeal, see *Ward*, 288 Ga. at 646-647, he has not suggested any way in which his presence during the bench conferences would have changed the outcome of his trial.