295 Ga. 105
FINAL COPY

S14A0300. CASTRO v. THE STATE.
S14A0301. PARKER v. THE STATE.

MELTON, Justice.

Following a jury trial, Eric Castro ("Castro") was found guilty of malice murder, two counts of felony murder, and various other offenses in connection with the death of two-year-old Kailee Parker. Heather Parker ("Parker"), Kailee's mother, was found guilty of two counts of felony murder, both predicated on the offenses of cruelty to children for Parker's failure to seek medical treatment for Kailee.[1] In Case No. S14A0300, Castro contends that the

---

[1] On September 7, 2012, Castro and Parker were each indicted for malice murder, two counts of felony murder, aggravated assault, aggravated battery, two counts of cruelty to children in the first degree, and one count of cruelty to children in the second degree. Following an April 29 – May 2, 2013 joint jury trial, Castro was found guilty on all counts. Parker was found guilty of both counts of felony murder against her, one count of first degree cruelty to children, and one count of second degree cruelty to children. Parker was acquitted of the remaining charges. On May 9, 2013, Castro was sentenced to life imprisonment for malice murder; twenty consecutive years for aggravated assault; and ten years consecutive for each of the cruelty to children in the first degree charges. The two felony murder convictions were vacated by operation of law. See Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). Castro's remaining convictions were merged for sentencing purposes. Parker was sentenced to life in prison for felony murder during the commission of cruelty to children in the

evidence presented at trial was insufficient to support the verdict and that the trial court erred in admitting into evidence at trial certain autopsy photographs of Kailee. In Case No. S14A0301, Parker argues that the evidence presented at trial was insufficient to support the verdict against her and that the trial court erred in its charge to the jury. For the reasons set forth below, we affirm in both cases.

*Case No. S14A0300*

1. Viewed in the light most favorable to the jury's verdict, the record shows that Kailee died on Monday, June 25, 2012, from significant and repeated trauma to the head and face while she was under the exclusive care of Castro and Parker. External bruising to Kailee's face, a skull fracture extending across the back of her skull, subdural hemorrhaging, and brain swelling indicated that Kailee's injuries resulted from her being slammed against a surface such as a

---

first degree, and her remaining convictions were merged with that conviction for sentencing purposes. On May 21, 2013, Parker filed a motion for new trial, and Castro filed his motion for new trial the next day. Castro amended his motion for new trial on September 3, 2013, and Parker amended hers on September 9, 2013. Both motions for new trial were denied on September 12, 2013. Castro and Parker filed their timely notices of appeal on September 20, 2013, and October 10, 2013, respectively. The appeals were docketed in this Court for the January 2014 term and orally argued on February 17, 2014.

floor or a wall, and that her injuries could not have resulted from her falling off of a toilet or onto some stairs. The injuries that Kailee sustained would have caused her death within a matter of hours. Kailee had also sustained an older injury to her head that was separate and distinct from those injuries that had caused her immediate death. Symptoms from this older injury included nausea, loss of consciousness, and lack of alertness.

In addition to being the only people who were taking care of Kailee on the day that she died, Castro and Parker were also Kailee's primary caregivers during the week leading up to her death. During that time, there were several instances of, and signs of, Kailee being physically abused. On the Monday before Kailee's death, Parker heard Castro slap Kailee while they were sitting in their car. Castro hit Kailee again on Wednesday, while trying to make her stay in her room. On Thursday, Castro was taking care of Kailee when she became sick and vomited. Later that day, Parker noticed a bruise on Kailee's back and shoulder, which Castro claimed resulted from Kailee falling against the television. Parker took Kailee to her aunt's house for a visit on Friday, where Kailee fell and hit her forehead on some brick steps. Although the fall was minor, when Kailee's aunt went to visit Kailee at Castro and Parker's home the

3

next day, she noticed that Kailee had a big "goose egg" bruise on her forehead and that Kailee had black eyes. There was also a general worsening of Kailee's condition on Saturday that included her being very weak, acting distant, and vomiting. Castro convinced Parker not to take Kailee to the hospital because of the possibility that the Department of Family and Children Services would become involved due to Kailee's bruises.

On Sunday evening, Castro struck Kailee after claiming that Kailee had stuffed too much food in her mouth. Kailee had also been nauseated throughout the day and vomited just before bed time. Castro cleaned Kailee up and forced her to sleep on the floor in Parker's bedroom, wrapping her tightly in a bed sheet and covering her with a blanket. Later, Parker was awakened by thumping noises and observed Castro standing over Kailee. Parker told Castro to get out of the room and placed Kailee in the bed with her.

Late Monday morning, the day that Kailee died, Parker and Castro tried to feed Kailee once more, after which she made a gurgling sound, spit the food out, and vomited in her bowl. Castro told Parker that Kailee needed to go to the hospital, but Parker refused to take her there because Parker had a 2:00 p.m. appointment that afternoon and said that she would not have time to take Kailee

4

to the hospital.

Later that day, Adam Dempsey saw Castro walking down a road near his home while carrying a limp Kailee in his arms. Dempsey stopped to offer help and observed that Kailee was not breathing, and he could not detect a pulse. Dempsey also saw that Kailee was covered in bruises, mostly on her head and chest. Dempsey called emergency services. Shortly thereafter, paramedics arrived and rushed Kailee to the hospital, where she died.

The evidence was sufficient to enable a rational trier of fact to find Castro guilty of all the crimes of which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Castro contends that the trial court erred by allowing into evidence autopsy photographs of Kailee's skull, showing a skull fracture and hemorrhaging. However, Castro did not object at trial to the admission of this evidence. Therefore, he has waived review of this issue on appeal. Zamora v. State, 291 Ga. 512 (3) (731 SE2d 658) (2012).

*Case No. S14A0301*

3. The evidence recited above was also sufficient for a rational trier of fact to find Parker guilty of the crime of which she was convicted beyond a

5

reasonable doubt. See Jackson, supra. Indeed, in light of Parker's knowledge of Kailee's condition and the evidence of abuse that Parker witnessed, the jury was authorized to conclude that Parker's refusal to take Kailee to the hospital on the day that she died "directly and materially contributed to the happening of a subsequent accruing immediate cause of [Kailee's] death, or that the injury materially accelerated the death, although proximately occasioned by a pre-existing cause." (Citation and punctuation omitted.) Chua v. State, 289 Ga. 220, 229 (1) (b) (710 SE2d 540) (2011). See also State v. Jackson, 287 Ga. 646, 654 (3) (697 SE2d 757) (2010) ("Proximate causation imposes liability for the reasonably foreseeable results of criminal . . . conduct if there is no sufficient, independent, and unforeseen intervening cause.").

4. Parker argues that the trial court erred by reading the definitions for the separate felony counts against her at the same time that it read the jury instructions on the felony murder counts. Specifically, Parker asserts that, by reading the definitions for the separate felonies in this manner, the jurors could have been led to believe that they were obligated to find Parker guilty of felony murder even if they only found Parker guilty of one of the predicate felonies. We disagree.

6

The record reveals that, while giving its jury instructions for felony murder and the predicate felonies, the trial court repeatedly emphasized that the definitions for each crime were to be used separately in determining whether Parker was guilty or not guilty of each of the counts. The court reiterated later in the charge that the "[c]onviction of one offense doesn't necessarily require conviction of another." Furthermore, when the court asked the jurors whether they understood that they could consider each charge separately, the jurors replied in the affirmative. Considering the charge as a whole, as we must, we find no error. See, e.g., Johnson v. State, 289 Ga. 650 (5) (715 SE2d 99) (2011).

Judgments affirmed. All the Justices concur.

Decided April 22, 2014.

Murder. Floyd Superior Court. Before Judge Colston.

C. Ronald Patton, for appellant (case no. S14A0300).

Robert C. Rutledge, for appellant (case no. S14A0301).

Leigh E. Patterson, District Attorney, Kay A. Wetherington, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vicki S. Bass, Assistant Attorney General, for appellee.