**SECOND DIVISION
MILLER, P. J.,
HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 25, 2021**

# In the Court of Appeals of Georgia

A21A0214. ALVARADO v. THE STATE.

HODGES, Judge.

Following a jury trial in which he was accused of sexual crimes against three young brothers, Juan Fernando Alvarado was convicted of two counts of aggravated child molestation, three counts of child molestation, and one count each of attempted child molestation and solicitation of sodomy of a child under 18 years of age.[1] He appeals from the partial denial of his motion and amended motion for new trial,[2] contending that the evidence was insufficient to sustain his conviction for attempted

---

[1] After the State conceded that the evidence did not support a conviction on an additional, fourth count of child molestation, the trial court directed a verdict of acquittal as to that count.

[2] The trial court granted the motions, in part, to correct a sentencing error.

child molestation of one of the brothers, M. R.,[3] and that his right to be present at critical stages of his trial was violated by his absence from bench conferences when discussions occurred related to jury strikes. For the reasons that follow, we affirm.

"On appeal from his criminal conviction, [Alvarado] is no longer presumed innocent and all of the evidence is viewed in the light most favorable to the jury's verdict." *Meddings v. State*, 346 Ga. App. 294 (816 SE2d 140) (2018).

So viewed, the evidence adduced at trial shows that Alvarado lived with his cousin's family for seven or eight years. During that time, he sexually abused his cousin's three young boys. After the boys' parents separated, the boys eventually told one another and their parents about the sexual abuse. When the boys' father confronted Alvarado about the sexual abuse, Alvarado did not deny it. He only hung his head and did not speak.

The first brother, L. R., testified that Alvarado began sexually abusing him when he was about four years old. Alvarado forced the boy to touch Alvarado's penis and to engage in oral and anal sex many times, sometimes in exchange for money.

---

[3] Alvarado does not argue that the evidence was insufficient as to any of the other counts, none of which involved the child who was the victim of the crimes discussed in this appeal.

2

Alvarado threatened to kill the child with a machete if the child told anyone about what had happened.

The second brother, C. R., testified that Alvarado had sat close to him, touched his penis and held him closely around the shoulders. When the boy was about 12, Alvarado massaged the child's penis and showed him a $20 bill. Alvarado threatened to kill the boy with a machete if he told anyone. The boy had previously seen a machete under Alvarado's bed.

The crimes committed against the third brother, M. R., are the only convictions Alvarado challenges on appeal. When M. R. was 13 years old, Alvarado came home drunk from a party. The victim was sitting on the couch watching a movie. He testified that Alvarado "started attacking" him, trying to "pull my shirt up and stuff like that." The victim knew Alvarado was "trying to rape me by the way he was touching me," because Alvarado was "aggressive" in using his hands to touch the victim's chest and arms. The victim refused to let Alvarado pull down his pants, and testified of the incident, "I wasn't going to let that happen. . . . I didn't want that to scar me for life." The victim eventually succeeded in fighting off the drunken Alvarado, who went to another room and "passed out."

1. Alvarado argues that his conviction for attempted child molestation of M. R. cannot be sustained. He contends that the acts the child described do not inherently show an intent to molest and, without more, do not show any substantial step toward sexual molestation.[4] We disagree.

"A person commits the offense of child molestation when such person: . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" OCGA § 16-6-4 (a). A person commits a criminal attempt when, "with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1.

Citing testimony from a school counselor in whom the victim confided, Alvarado argues that the counselor interpreted the incident as involving physical,

---

[4] Alvarado also attempts to append to this enumeration, in a passing mention, that the jury should not have been permitted to hear other acts evidence pursuant to OCGA § 24-4-404 (b). He neither enumerates this contention as error, nor provides record citations to support it, the latter in contravention of Court of Appeals Rule 25 (c) (2) (i). "This court has no jurisdiction to consider grounds which though argued are not enumerated as error according to OCGA § 5-6-40." (Citation and punctuation omitted.) *Fradenburg v. State*, 296 Ga. App. 860, 863 (676 SE2d 25) (2009).

rather than sexual, abuse, and that the evidence of Alvarado's touching the victim's chest and arms was thus insufficient to show intent and a substantial step toward the crime.

It is well-settled that the testimony of a single witness, in this case the child-victim, is sufficient to establish a fact. *Burke v. State*, 316 Ga. App. 386, 390 (2) (729 SE2d 531) (2012). Further, Alvarado's "[i]ntent, which is a mental attitude, can be inferred, and the law accommodates this. Whether a defendant possesses the requisite intent is a question of fact for the jury after considering all the circumstances surrounding the acts of which the accused is charged, including words, conduct, demeanor, and motive." (Citations and punctuation omitted.) *Collins v. State*, 276 Ga. App. 358, 359 (1) (623 SE2d 192) (2005) (finding jury was authorized to infer requisite intent for attempted child molestation where defendant touched victim's private area, despite his testimony that he did so only to keep her from falling off a four-wheeler). Here, the jury clearly believed the victim's testimony that Alvarado aggressively touched his chest and arms and attempted to pull down his pants, such that the victim fought to protect himself, and that Alvarado's actions indicated he had taken a substantial step toward molesting the child. The jury clearly disbelieved the counselor's interpretation that the victim had only discussed or been subject to

physical abuse. See *Gearin v. State*, 255 Ga. App. 329, 333 (1) (565 SE2d 540) (2002). "We will not disturb a factual determination by the jury on intent unless *it is contrary to the evidence and clearly erroneous*." (Citation and punctuation omitted; emphasis supplied.) *Collins*, 276 Ga. App. at 359-360 (1) (finding that even if the finding that the accused had the intent to commit the crime is supported by weak evidence, the verdict will not be set aside on that ground). The evidence was sufficient.

2. Alvarado argues that his right to be present at critical stages of his trial – specifically, during three bench conferences during voir dire – was violated. We disagree.

"[T]he Georgia Constitution guarantees [a] criminal defendant[] the right to be present, and see and hear, all the proceedings which are had against him on the trial before the Court. It also has long been established that proceedings at which the jury composition is selected or changed are critical stages at which the defendant is entitled to be present." (Citations and punctuation omitted.) *Zamora v. State*, 291 Ga. 512, 517-518 (7) (b) (731 SE2d 658) (2012). "[W]e have repeatedly held that a defendant has the right to participate in a bench conference during which a prospective juror or a trial juror is discussed and removed." *Champ v. State*, – Ga.

6

App. – (2) (b) (854 SE2d 706, 714 (8) (b) (2021). Additionally, "[w]here the accused is involuntarily absent from the proceedings, the trial judge should have no communications with a juror about the case, except as to matters relating to the comfort and convenience of the jury." (Citation and punctuation omitted.) *Zamora*, 291 Ga. at 518 (7) (b).

Alvarado was present in the courtroom during voir dire, which involved individual and general group questioning, as well as sequestered questioning. Alvarado knew what was happening, as the trial court explained in open court the process of selecting a jury and counsels' role in asking questions to assess the partiality or impartiality of each potential juror, so that a proper jury could be selected. "Although [Alvarado] was in the courtroom during trial when several bench conferences occurred, [he] was not physically present at the bench during the conferences. [He] thus contends that [he] was not present at all critical stages of [his] trial and that [his] conviction must therefore be reversed." *Kennedy v. State*, 274 Ga. 396, 397 (3) (554 SE2d 178) (2001).

We note that despite the fact that Alvarado's counsel sought to strike all three potential jurors for cause because of their potential for bias against him, counsel did not ask that Alvarado be included in any of the bench conferences, Alvarado has not

asserted that his counsel was ineffective.[5] We will outline the facts of each bench conference in turn.

(a) Potential Juror D. M.: The voir dire transcript shows that D. M. was questioned in open court about his knowledge of his wife's job as a school counselor, where she sometimes dealt with reports of child sexual abuse. D. M. stated that he could be impartial, but also said that a child abuse case was "difficult," and that "when you hear a list of charges . . . [and] based on the things that my wife has told me about, I mean, it's highly likely somebody's involved in something they shouldn't have . . . ."

Alvarado's counsel said in front of Alvarado that he wanted to make a motion, but did not say what motion. The trial transcript indicates that a brief bench conference occurred. During the bench conference, Alvarado's counsel said that while potential juror D. M. wanted to be impartial, "he's leaning. ... [H]e's already predetermined to some extent, and would have to be moved off that position." The

_____

[5] See *Lyde v. State*, 311 Ga. App. 512, 515 (1) (716 SE2d 572) (2011) ("While harmless error review is inapplicable to a pure right-to-be-present claim under the Georgia Constitution raised on direct appeal, it [is] applicable to a right-to-be-present claim raised indirectly under an ineffective assistance claim.") (citation and punctuation omitted). Alvarado was represented by different counsel at trial than at the motion for new trial stage and on appeal.

State countered that the juror simply found a child molestation case distasteful. The trial judge denied the motion to strike for cause , determining that D. M. could be impartial. D. M. was not dismissed from the jury pool and was sent out on break with the other potential jurors.

The transcript shows that the following day, the trial court gave counsel time to discuss potential jurors with their clients. After this discussion time, Alvarado's defense counsel then used a peremptory strike to remove D. M.

(b) Potential Juror H.[6]: After a break in voir dire, the trial court called Juror H. to the bench, and the State approached. Juror H. stated that her son was the victim in a pending child molestation case prosecuted by one of the State's attorneys who also was prosecuting Alvarado. The prosecutor told the trial court that he and Alvarado's counsel "have discussed" Juror H.'s statement that she was "not a proper juror for this case." The trial court asked if they agreed to release Juror H. The State answered yes, adding that defense counsel "would like to put it on the record. He's asking that she be stricken for cause." Defense counsel replied, "That's correct." The trial court told Juror H. to turn in her badge and go, and then concluded the bench conference.

---

[6] The record does not contain Juror H.'s first name or initial.

9

(c) Potential Juror M. G.: This juror stated in open court that her ex-husband had molested their young daughter, and that she herself had been raped as a teenager. While M. G. said she had no opinion as to the defendant's guilt or innocence because she had not heard any evidence, she also said that because the charges against Alvarado spanned a number of years, she was leaning "probably against the defendant," and did not know if she could be impartial.

Alvarado's counsel told the trial court, in open court, that he had a motion, Counsel, once again, did not say what type of motion, and the attorneys approached the bench. During the brief bench conference, Alvarado's counsel argued that M. G. was "leaning probably against the defendant." The trial court granted Alvardo's motion and the State did not object. The bench conference ended, and the trial judge told M. G. in open court that she was excused and asked her to turn in her badge, with no objection from Alvarado or his counsel.

We note that with potential Jurors D. M. and M. G., Alvarado's counsel made the motion leading to the bench conference and asked the trial court to strike those jurors for cause; Alvarado's counsel also asked to strike potential Juror H. for cause, although the State initiated the approach to the bench. In none of these instances did Alvarado's counsel ask if Alvarado could approach, nor did Alvarado make such a

10

request to the judge. See generally *Champ*, 854 SE2d at 713 (2) (a) (vii) (noting that "at no point during the jury selection process or later during his trial did Appellant object to, ask about, or otherwise mention his absence from these bench conferences, the discussions at the bench conferences, or the excusal or retention of any of the prospective jurors").

Further, at the conclusion of jury selection, the trial court asked in open court, "Is this your jury?" To which the State replied, "It is your honor." The defense replied, without raising any objection, "Yes, your honor."

> [D]enial of the right to be present guaranteed by the Georgia Constitution is not subject to harmless error review on direct appeal. Instead, a violation is presumed to be prejudicial. Thus, absent a valid waiver, violation of the right to be present triggers reversal and remand for a new trial whenever the issue is properly raised on direct appeal.

*Smith v. State*, 284 Ga. 599, 609 (4) (669 SE2d 98) (2008).[7] We note that our Supreme Court determined that a "*violation* of the right to be present," rather than merely an *allegation* of a violation of the right to be present "triggers reversal and

---

[7] *Smith* also notes that, unlike the Georgia Constitution, the "federal constitutional right to be present *is* subject to harmless error review on direct appeal." (Emphasis supplied.) Id. at 608 (4), n. 20, citing *Rose v. Clark*, 478 U. S. 570, 576-579 (II) (A) (106 SCt 3101, 92 LE2d 460) (1986); *Rushen v. Spain*, 464 U. S. 114, 117-120 (104 SCt 453, 78 LE2d 267) (1983).

remand ... ." (Emphasis supplied.) Id. Thus, Alvarado "bears the burden of showing that he was denied the right to be present at bench conferences, while the State [*then*] bears the burden of showing that [Alvarado] waived that right." (Emphasis supplied.) *Pruitt v. State*, 354 Ga. App. 73, 76 (2) (840 SE2d 597) (2020).

Here, Alvarado has failed to meet his burden of showing that he was denied the right to be present. At the hearing on motion for new trial, at which Alvarado was represented by new, post-trial counsel, neither Alvarado nor his trial attorney testified. Post-trial counsel presented no evidence, declined to offer more than minimal argument, and instead asked the trial court to rule on the brief. On this point, the brief contends only that both sides' "attorneys approached the bench without [Alvarado] several times" and that "juror qualifications were not only discussed but ruled upon in the absence of [Alvarado]."

As noted above, a criminal defendant has a right under the Georgia Constitution to "*to be present, and see and hear*, all the proceedings which are had against him on the trial before the court." (Citation and punctuation omitted; emphasis supplied.) *Zamora*, 291 Ga. at 517-518 (7) (b). He also has the right to "participate" in a bench conference where a prospective juror "is discussed and removed." *Champ*, 854 SE2d at 714 (2) (b). It is undisputed that Alvarado was in the

12

courtroom during the bench conferences. He has alleged only that he did not approach the bench, and the transcript indeed indicates that only the attorneys approached the bench. Alvarado, however, has neither argued nor presented evidence or testimony that he was unable to *see and hear* or to *participate* in what occurred. Compare *Champ*, 854 SE2d at 714 (2) (b). ("The trial transcript indicates that Appellant *could not hear* and therefore was not 'present,' for any of the bench conferences at issue" and that, because he "did not '*see and hear*' those proceedings . . . he was not 'present'") (citation omitted; emphasis in supplied and original).

Neither Alvarado nor his trial counsel testified at the hearing on the motion for new trial. As a result, we have no idea what trial counsel told – or did not tell – Alvarado about his right to be present or about what was discussed at the bench conferences. Compare *Ramirez v. State*, 345 Ga. App. 611, 617-618 (2), n. 2 (814 SE2d 751) (2018) (noting that, at motion for new trial hearing, trial counsel testified that while he did not specifically recall discussions with Ramirez about how to handle bench conferences, his standard practice was to discuss the right to be present with clients before trial and to inform the court if a client wanted to be present; Ramirez testified that any agreement with counsel to not be present was conditioned on counsel informing him of the substance of the bench conference, which did not

13

happen). Finally, there is no evidence regarding what Alvarado could or could not hear. Compare *Champ*, 854 at 713 (2) (b), n. 6 (noting that the trial court told a juror called to the bench that "the lawyers would ask her questions in a low tone so that the other prospective jurors could not overhear.").

Because Alvarado has presented no evidence to meet his burden of showing that he was denied the right to be present in the sense that he could not see, hear, and participate, he has failed to meet his initial burden and we will not reverse on this basis. See *McKinney v. State*, 251 Ga. App. 896, 901-902 (5) (555 SE2d 468) (2001) (finding that, where defendant argued he was denied his right to be present at critical stages of his trial, but the record did not establish whether defendant was present for a motion for directed verdict,"it is complete speculation as to whether [defendant] was in fact present" and where defendant on motion for new trial "never testified that he was not present for directed verdict motion [and] never testified that he would have elected to be present ... and [defendant's] trial counsel was never questioned . . . with regard to this issue[,] ... there is no evidence in the record as to this point ... .").

Although the trial court determined that Alvarado had acquiesced in a waiver of his right to be present,[8] we do not reach this issue.

> A waiver of constitutional rights will not be presumed, and the State has the burden to show such from the record; however, under the circumstances presented here, we do not reach the propriety of any 'waiver' of [Alvarado's] presence, since his lack of presence is not *factually* established, *a burden that belongs to [Alvarado]*. This [C]ourt cannot consider the factual assertions of the parties appearing in briefs when such evidence does not appear on the record.

(Citation and punctuation omitted; emphasis in original and supplied.) *McKinney*, 251 Ga. App. at 902 (5). As outlined above, it is undisputed that Alvarado was in the courtroom when these bench conferences took place. It is well-settled that to be present in the constitutional sense, Alvarado must have been able to see, hear, and participate if he wished. *Zamora*, 291 Ga. at 517-518 (7) (b); see generally *Champ*, 854 SE2d at 715 (2) (c) (noting that "defendants often may know more about the subject of proceedings in which they do not participate than is apparent from a trial transcript" and "may be able to see things that may not be shown by the trial transcript").

---

[8] Nonetheless, we will affirm a trial court if its judgment is right for any reason. See *Cooke v. State*, 356 Ga. App. 679, 683 (2), n. 4 (848 SE2d 693) (2020).

In sum, Alvarado has presented no evidence or argument about whether or not he could see, hear, or participate in the bench conferences. Alvarado, however, has only argued and presented evidence that when bench conferences occurred, he did not go up to the bench with his counsel. Accordingly,"there is no factual basis for the legal arguments made and his claim of error is meritless." *McKinney*, 251 Ga. App. at 902 (5).

*Judgment affirmed. Miller, P. J., and Pipkin, J., concur*.