310 Ga. 832
FINAL COPY

S20A1552.  CHAMP v. THE STATE.

NAHMIAS, Presiding Justice.

Appellant Dekito Champ was convicted of malice murder and a firearm offense in connection with the shooting death of his former girlfriend, Jana Watson. Appellant's sole claim on appeal is that the trial court erred by violating his Georgia constitutional right to be present at numerous bench conferences that occurred during jury selection. We conclude that the evidence presented at Appellant's trial was sufficient to support his convictions, so we affirm that part of the trial court's judgment. However, as explained further below, because Appellant's right-to-be-present claim was raised for the first time on appeal, there was no opportunity for the State to develop the record and no findings or rulings by the trial court as to that claim, particularly as to whether Appellant acquiesced to his absences from the bench conferences. We therefore vacate the trial court's judgment in part and remand the case for that court to hold a

hearing and rule in the first instance on Appellant's constitutional claim.[1]

1. Viewed in the light most favorable to the verdicts, the evidence presented at Appellant's trial showed the following. Appellant and Watson started dating in 2012 and at times had a tumultuous relationship, during which Watson called the police about Appellant on multiple occasions. In January 2016, Watson ended the relationship. Appellant then began harassing her by phone and in person, including an occasion when he showed up at her workplace with a pistol. He also repeatedly threatened to

---

[1] Watson was killed on March 20, 2016. In June 2016, a Ben Hill County grand jury indicted Appellant for malice murder, felony murder, aggravated assault, possession of a firearm during the commission of a felony, and theft by receiving stolen property. The theft charge was later nolle prossed. At a trial from April 9 to 18, 2018, the jury found Appellant guilty of the remaining charges. The trial court sentenced him to serve life in prison for malice murder and five consecutive years for the firearm conviction; the felony murder count was vacated by operation of law. Although the court indicated that the aggravated assault count was also vacated by operation of law, that count actually merged into the malice murder conviction. See *Malcolm v. State*, 263 Ga. 369, 372-374 (434 SE2d 479) (1993). Appellant filed two timely motions for new trial. After a hearing, the trial court filed an order denying the motions in January 2020. Appellant then filed a timely notice of appeal. The case was docketed to this Court's August 2020 term and orally argued on November 4, 2020.

commit suicide if she refused to resume their relationship.

On March 17, 2016, Appellant told Watson that he planned to euthanize the dog they had shared, and Watson offered to take it. Later that day, Appellant sent Watson text messages threatening to send sexually explicit images of her to her mother and her father's colleagues, prompting Watson to inform Appellant that if he did not stop contacting her, she would take legal action. Appellant replied, "Wow. Okay. I'm done."

On the morning of March 20, Watson drove from Atlanta to Fitzgerald, where Appellant was living with his mother and grandmother, to retrieve the dog. As Watson was preparing to leave, Appellant's mother saw him standing by the open door of Watson's car while she sat in the driver's seat; they were having a "heated conversation." Appellant's mother went inside the house, and shortly thereafter, she heard gunshots. She ran outside, saw that Watson had been shot, and called 911. Two neighbors also saw Appellant and Watson talking at Watson's car before the neighbors went inside their house. Moments later, they heard two rounds of

3

gunfire — three muffled shots soon followed by three louder shots — and looked out their window to see Appellant crawling along the ground outside the driver's side of Watson's car. Appellant's 9mm pistol was found on the ground nearby. Watson, who had suffered four contact gunshot wounds to her upper left chest, died at the scene. Appellant, who had three contact gunshot wounds to his upper left chest, was airlifted to a hospital.

Appellant testified at trial, claiming that Watson had found his gun in his truck, taken it, and then shot him as he squatted by her car, before he took the gun from her and shot back while still squatting. But the police found a four-page suicide note in Appellant's jacket pocket that said in part: "The woman I've done everything possible for doesn't want me. She doesn't care about me nor our family." And the forensic evidence presented at trial indicated that Watson's contact wounds were not consistent with a struggle over the gun and that the downward trajectory of the bullets that struck her was not consistent with the shooter's being in a squatting position.

4

Appellant does not challenge the legal sufficiency of the evidence supporting his convictions. Nevertheless, in accordance with this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).[2]

2. Appellant contends that his absences from a number of bench conferences during the jury selection process at his trial violated his right under the Georgia Constitution to be present

---

[2] We remind litigants that this Court will end our practice of considering the sufficiency of the evidence sua sponte in non-death penalty cases with cases docketed to the term of court that began in December 2020. See *Davenport v. State*, 309 Ga. 385, 399 (846 SE2d 83) (2020). The Court began assigning cases to the December term on August 3, 2020.

during all critical stages of the criminal proceedings against him, and that he did not waive his right to be present or acquiesce to his absences. As explained below, this claim, and particularly whether Appellant acquiesced to his absences from the bench conferences, should be addressed in the first instance by the trial court on remand.

(a) The transcript of Appellant's trial provides the following information about what he could see or hear while present in the courtroom during the jury selection process, what the trial court explained about that process, and what occurred at the series of bench conferences described below that Appellant could see, but not hear.

(i) *Preliminary instructions.* In the trial court's preliminary instructions to the prospective jurors, the court explained that the law gives the attorneys for the State and the defendant the right to question prospective jurors concerning their qualifications to serve as trial jurors. The court also explained that the lawyers would ask questions to panels of 14 jurors until they had enough potential

6

jurors to select from.

(ii) *Prospective Juror M.*[3] When the trial court asked the first panel of prospective jurors if they could hear or understand the court, Juror M said that she did not understand English very well and did not know if that would prevent her from understanding everything going on in the trial. The court asked the lawyers to approach for a bench conference, where it asked them if there were any problems with excusing Juror M for cause. Neither lawyer objected. The court then announced in open court that Juror M was being "excuse[d] for cause."

(iii) *Prospective Jurors C. S., C. Z., and R. H.* When the prosecutor asked the panel if any of them knew Appellant, Juror C. S. said that he knew Appellant's mother and uncles; he added that he considered his relationship with them to be a close relationship and indicated that it would make it hard for him to be fair and impartial. Later, defense counsel asked the panel if any jurors felt

---

[3] We will refer to the jurors by their initials; the record does not indicate this juror's first name.

that because this case involved a homicide, it was not appropriate for them to serve, or if they had religious or philosophical reasons for not wanting to be selected to serve. Juror C. S. reiterated that Appellant's mother and uncles were "like family" and that it would be hard for him to find Appellant guilty.

When the prosecutor asked the panel if any of them lived in the area where the incident occurred, Juror C. Z. said that her husband's uncle lived across the street and that she and her husband had been there on the date of the shooting. The prosecutor requested a bench conference, where he asked to reserve the right to question Juror C. Z. later to avoid tainting the jury pool. The trial court decided to bring Juror C. Z. up to the bench to question her at that time. When she was at the bench, the court told her they were going to ask her questions in a low tone of voice so the other jurors could not overhear. Counsel for both parties then questioned her about what she knew regarding the incident prior to coming to court. Juror C. Z. told them that she and her husband were "pulling up as all the ambulance and stuff were there"; however, she also said that they

had heard gunshots and looked out the window, but they had not really observed anything until the ambulance and the police arrived. Juror C. Z. said she knew "it happened in a vehicle and all that, but that's about it." She also confirmed that she had not spoken to the police, but she was not sure if her husband's uncle had.

Later, during further questioning of the panel in open court, Juror C. Z. said that her husband was a convicted felon, but that she did not have any bias for or against the district attorney's office as a result of its prosecution of her husband's case. In response to a question about whether any of the jurors' attention would be divided if they had to serve for a multiple-day trial, Juror C. Z. said that she would have a problem because her place of employment had only a handful of people working there and they had a lot of jobs to do.

In response to a question asking if any prospective jurors had mental health training, Juror R. H. said, "I don't really have a problem," adding, "I can't read or write." When he later explained why he did not have a Facebook account, he reiterated that he could not read or write.

At a bench conference after the questioning of this first panel concluded, defense counsel said, "I didn't want to do it until after I finished to try not to taint the panel, but I think the issue with [Juror C. Z.] —" at which point the prosecutor interjected that he had no objection, and the trial court said that it would excuse Juror C. Z. for cause. The prosecutor then moved to excuse Juror C. S. for cause, and defense counsel had no objection. Defense counsel then said, "I was thinking about [Juror R.H.] for the fact —" at which point the prosecutor said he had no objection.[4] Much later, just before the lawyers began the silent strikes to exercise their peremptory challenges, the trial court announced in open court that Jurors C. S., C. Z., and R. H. were "excused" and could leave the courtroom.

(iv) *Prospective Juror Q. P. and the entire second panel*. The prosecutor asked the next panel of prospective jurors whether any

---

[4] Defense counsel also moved to excuse Juror M. R., whose questioning in open court had shown that he worked at a jail and had previously served as a witness for the State. The prosecutor did not agree with excusing Juror M. R. for cause because the juror had said that he could be fair and impartial, but the prosecutor agreed that defense counsel had a basis to strike the juror. The trial court informed the lawyers that it was not planning to excuse Juror M. R. for cause. In his brief here, Appellant raises no issue regarding the discussion of Juror M. R.

10

of them knew Appellant or his family. Juror Q. P. responded that he and Appellant were incarcerated together at the county jail. The prosecutor then asked for a bench conference, at which the lawyers and the trial court discussed options for moving forward in light of this response. Defense counsel indicated that Appellant had written down some names, including Juror Q. P.'s name, before questioning began, saying specifically: "Your Honor, I wasn't expecting that [response], but [Appellant] wrote that down beforehand."

It was unclear to the court and the lawyers who may have heard Juror Q. P.'s response, because he spoke softly and the judge had not been able to hear him. Accordingly, the court, with agreement from the lawyers, decided that it needed to excuse the entire second panel, but they did not think the other panels had heard Juror Q. P.'s response. Defense counsel mentioned that he did not want to draw attention to the fact that they were removing an entire panel. The court therefore agreed to proceed with questioning the panel to avoid a spectacle and then to excuse the entire panel just before lunch.

11

The prosecutor also said that if the panel was being excused, he would not ask Juror Q. P. any more questions. Defense counsel said, "Yeah, but I was already going to — my client wrote these names down before we started." When the prosecutor then asked, "[A]m I going to have that same issue with [Juror M. C.], because [he] has been in jail? I know he's been in the jail." Defense counsel replied:

> I don't think we'll have that issue. It's just that [Appellant] was in jail with [Juror Q. P.] and I think he knows [Juror M. C.] more, not from jail, but from school. So, what I'll have him do is each person we'll write the names in advance, so I could be listening to their questions.

The questioning of the second panel (purely for show) then resumed in open court. When the questioning concluded just before lunch, the trial court called a bench conference at which the court suggested bringing each of the 14 jurors from the panel to the bench individually and excusing them without telling them why, then asking the remaining panels as a whole if anyone had heard Juror Q. P.'s response. The court, with the lawyers at the bench, then

12

called the 14 jurors up individually and excused each of them for cause. No announcement of these excusals was made in open court. When this long bench conference ended, the court asked if any of the remaining prospective jurors had heard any answers that Juror Q. P. gave while he was being questioned. No one raised a hand. The court then recessed for lunch.

(v) *Prospective Juror J. R.* Immediately after proceedings began following the lunch break, the trial court asked to see the lawyers for another bench conference. The court informed the lawyers that it had excused Juror J. R. right before lunch because he was experiencing severe back pain. Neither lawyer objected. This juror's excusal also was not announced in open court.

(vi) *Prospective Jurors L. M. and P. B.* Following the questioning of the third panel of prospective jurors, the trial court held a bench conference to discuss excusals for cause. Defense counsel moved to excuse Juror L. M. because she had said that her father-in-law was the chief of police. The court declined to excuse her for cause. At a similar bench conference after the questioning of

13

the fourth and final panel, defense counsel sought to excuse Juror P. B. because she had said that her husband's cousin was going to be a witness. The prosecutor argued against excusal based on Juror P. B.'s other answers, and the court decided not to excuse her for cause.

(vii) *Prospective Juror D. C., peremptory strikes, and final jury selection.* After the voir dire questioning was completed, the trial court explained the remainder of the jury selection process to the prospective jurors in open court, saying that the law gives the lawyers a recess so they can go over their notes and prepare for jury selection; after the recess, the lawyers would select the jury silently, and the clerk would go back and forth between the two tables; the lawyers would have up to nine strikes each, and there would be thirty names listed, so the twelve that were left over would be the jury; and two alternates would be selected as well.

The court then announced a recess, which lasted 26 minutes. When the recess ended, the trial court announced in open court that it had excused Juror D. C. during the recess because of an emergency medical situation in his family and that the lawyers had agreed to

14

his excusal; the record does not indicate when or where the lawyers so agreed.

The court then asked everyone to sit quietly while the clerk passed the "roster" back and forth between the tables and the lawyers made their strikes.[5] The court said that it would ask the clerk to read the names of the jurors after the lawyers finished. Immediately after the court announced that jury selection had begun, a bench conference took place, at which the court explained to the lawyers that there were six additional names listed at the bottom of the list that could be used for alternates if the lawyers went through the first 30 jurors with their strikes. The silent strike process then began. Another bench conference occurred during the process, at which the process for selecting alternates was briefly clarified. After the silent strike process was completed, the court

---

[5] The juror list in the record appears to be the "roster" that was used for the silent strikes. The list contains the 36 names of prospective jurors who were available for selection and omits the 20 names of prospective jurors who had been removed for cause or hardship. The record does not show if this juror list was provided to the parties before the pre-selection recess or whether Appellant received or was shown a copy of the list.

asked to see the list and for counsel to approach the bench. At this bench conference, the court asked for any objections to the jury selection process. Neither lawyer objected. The court then asked the clerk in open court to read the names of the 14 jurors selected and for those jurors to fill in the jury box. Once the names were read and the jurors selected entered the jury box, the trial jury was sworn.

Based on the trial transcript, at no point during the jury selection process or later during his trial did Appellant object to, ask about, or otherwise mention his absence from these bench conferences, the discussions at the bench conferences, or the excusal or retention of any of the prospective jurors.

(viii) *Post-trial proceedings.* The record shows that after the jury found Appellant guilty and the trial court sentenced him, he filed two motions for new trial, one through his trial counsel and the other through a lawyer who briefly represented him; a third lawyer filed a "brief in support of amended motion for new trial" and then represented Appellant at the hearing on the motions. The motions raised the general grounds and the sufficiency of the evidence and

16

alleged that the trial court committed an unspecified "error of law"; only the general grounds and sufficiency were argued in the brief and at the hearing. The jury selection bench conferences were not mentioned in any of these filings or at the hearing, and no right-to-be-present claim was raised, so the trial court did not rule on any such claim in its order denying the motions. Appellant retained his current counsel after his notice of appeal was filed, and the only claim raised in his brief in this Court is the alleged violation of his Georgia constitutional right to be present with respect to the jury selection bench conferences described above.

(b) This Court has long held that "the Georgia Constitution guarantees criminal defendants 'the right to be present, and see and hear, all the proceedings which are had against him on [his] trial before the [c]ourt.'" *Zamora v. State*, 291 Ga. 512, 517-518 (731 SE2d 658) (2012) (quoting *Wade v. State*, 12 Ga. 25, 29 (1852)). We have explained that this right may be violated when a defendant is excluded from conferences held at the bench between the trial court and the lawyers for the parties, because while the defendant may be

present in open court and thus able to *see* such bench conferences, he presumably cannot *hear* what is discussed (as preventing jurors and others in the courtroom from hearing such conferences is their very purpose). See id. at 518.[6]

The right to be present does not extend to situations where the defendant's presence "bears no relation, reasonably substantial, to the fullness of his opportunity to defend against the charge," and thus "would be useless, or the benefit but a shadow." *Heywood v. State*, 292 Ga. 771, 774 (743 SE2d 12) (2013) (citation and punctuation omitted). Such situations include bench conferences that deal with questions of law involving "essentially legal argument about which the defendant presumably has no knowledge," or with procedural or logistical matters. Id. (citation and punctuation omitted). However, "'(p)roceedings at which the jury composition is selected or changed are . . . critical stage(s) [of a trial] at which the defendant is entitled to be present,'" *Zamora*, 291 Ga. at 518

---

[6] In this case, for instance, the trial court told Juror C. Z. when she was called to the bench that the court and the lawyers would ask her questions in a low tone so that the other prospective jurors could not overhear.

18

(citation omitted), and we have repeatedly held that a defendant has the right to participate in a bench conference during which a prospective juror or a trial juror is discussed and removed. See, e.g., id.; *Murphy v. State*, 299 Ga. 238, 240 (787 SE2d 721) (2016) ("[A] defendant who is present in the courtroom but who does not participate in a bench conference at which a juror is discussed and dismissed is not 'present' to the extent required under the . . . state Constitution[ ].").

The trial transcript indicates that Appellant could not hear, and therefore was not "present," for any of the bench conferences at issue. Some portions of the bench conferences might be characterized as discussion of logistical or procedural issues regarding the jury selection process or legal argument about removal of particular prospective jurors (although we note that "this Court's precedents to date have not drawn a distinction between factual and legal issues with regard to a defendant's right to be present during discussions about a juror's removal," *Goodrum v. State*, 303 Ga. 414, 419 (812 SE2d 220) (2018) (Nahmias, J.,

concurring)). Several of the bench conferences involved or related to direct discussions between the trial court and prospective jurors, however, and the court also made the decision to remove a number of prospective jurors during the bench conferences. At least for those bench conferences, Appellant had a constitutional right to be present. See, e.g., *Murphy*, 299 Ga. at 240; *Zamora*, 291 Ga. at 518. Indeed, once Appellant raised a right-to-be-present claim in his brief to this Court, the State in its response brief forthrightly conceded this point.

(c) This concession does not end the analysis, however, because "'the right to be present belongs to the defendant, and he is free to relinquish it if he so chooses.'" *Brewner v. State*, 302 Ga. 6, 11 (804 SE2d 94) (2017) (citation omitted). A defendant may relinquish his right in several ways: if he personally waives the right in court; if his counsel waives the right at his express direction; if his counsel waives the right in open court while he is present; or, as seen most commonly in our case law, if his counsel waives the right and the defendant subsequently acquiesces to that waiver. See id. There is

no indication in the record Appellant personally waived his right to be present for these bench conferences or that his counsel waived that right in Appellant's presence or with his express authority. Compare id. at 12.

The question of acquiescence, however, is unclear. Acquiescence may occur when a defendant remains silent after he becomes aware of the proceedings occurring in his absence, so long as he had sufficient information concerning the matters occurring outside his presence for his silence to be fairly construed as consent. See *Howard v. State*, 307 Ga. 12, 21 (834 SE2d 11) (2019). See also *Jackson v. State*, 278 Ga. 235, 237 (599 SE2d 129) (2004) ("[A]ppellants acquiesced in the proceedings when their counsel made no objection and appellants thereafter remained silent after the subject was brought to their attention."). The determination of whether a defendant acquiesced to the violation of his right to be present is often highly fact-specific. See, e.g., *Burney v. State*, 299 Ga. 813, 820-821 (792 SE2d 354) (2016); *Smith v. State*, 298 Ga. 406, 410-411 (782 SE2d 269) (2016); *Zamora*, 291 Ga. at 519-520. And

the trial court's findings of fact on the issue will be upheld on appeal

unless clearly erroneous. See *Howard*, 307 Ga. at 21.[7]

In this case, the existing record shows that the trial court

provided the prospective jurors and Appellant an overview of how

the jury selection process would work. Appellant was present in the

courtroom throughout that process, able to see all of the bench

conferences as they occurred without his direct participation. He

was present for the questioning of particular prospective jurors

leading up to bench conferences, the court's subsequent excusal of

---

[7] The State argues that Appellant waived his right-to-be-present claim simply because he did not raise it until this appeal. But as discussed above, we have held that this is a personal right of the defendant that cannot be waived merely by the failure of his counsel to timely assert it; it must be relinquished by the defendant himself in one of the ways just discussed, which cannot occur until he is made sufficiently aware of the matter. See, e.g., *Pennie v. State*, 271 Ga. 419, 421-422 (520 SE2d 448) (1999) (holding that the defendant did not waive review of her right-to-be-present claim where her "lack of knowledge [of the proceeding held in her absence] prevented her from raising the issue during trial" and she raised it "'at the first opportunity,'" which was on motion for new trial after her appellate counsel reviewed the trial transcript and advised her of the issue (citation omitted)). Only if the defendant remains silent after becoming aware of the issue, rather than raising it at the first available opportunity, will we deem an effective waiver — which our cases generally call "acquiescence" — to have occurred. See, e.g., *Zamora*, 291 Ga. at 520. As discussed below, the point in time at which Appellant became aware of the issue in this case — whether at trial, during the motion for new trial proceeding, or only thereafter — is a matter to be determined on remand.

some of those jurors in open court, the silent strike process for the remaining jurors, and the seating of the jurors ultimately selected to try his case. Yet he never raised any question or concern about any of the bench conferences. From what Appellant was able to see and hear, it might be possible for a court to conclude that he had sufficient information about the subject of at least some of the bench conferences to have acquiesced to his absence from them. See, e.g., *Smith*, 298 Ga. at 410-411 (concluding that the defendant acquiesced to the removal of a prospective juror while he was taking an emergency restroom break, where he heard the juror's answer that could be and in fact was the reason for her removal for cause, had previously seen another juror removed for similar cause, and was repeatedly informed that the disputed juror had been removed for cause, but did not object to his absence or the prospective juror's removal during the trial).

That would be a more difficult conclusion to reach, based on the existing record, with regard to at least two of the bench conferences during which prospective jurors were removed. First, at the long

bench conference just before the lunch break, the trial court called up individually the 14 jurors on Juror Q. P.'s panel and excused each of those jurors for cause, without ever announcing the excusals in open court. An observer who had heard Juror Q. P.'s answer in open court about knowing Appellant from the county jail and realized after this bench conference that Juror Q. P. had been excused might infer what had happened with regard to that juror at the bench conference. But the other 13 jurors who were excused provided no information in open court to support their removal for cause; instead, they were removed because the court and the lawyers surmised (at an earlier bench conference) that those jurors were more likely to have heard Juror Q. P.'s answer than the other prospective jurors in the courtroom (who were then asked collectively if they had heard any of Juror Q. P.'s answers), but that was not explained in open court.

Second, at the bench conference right after the lunch break, the trial court informed the lawyers that it had excused prospective Juror J. R. just before lunch because the juror was experiencing back

pain. An observer like Appellant would know none of that; Juror J. R. was simply gone, if indeed that was noticed. See, e.g., *Ward v. State*, 288 Ga. 641, 644-646 (706 SE2d 430) (2011) (concluding that the defendants did not acquiesce to the trial court's ex parte excusal of a trial juror during a lunch break during trial, where the court informed the lawyers of the excusal before the defendants returned to the courtroom but the defendants were not informed by the court or by their lawyers, according to their lawyers' testimony at the motion for new trial hearing).

Yet defendants often may know more about the subject of proceedings in which they do not participate than is apparent from a trial transcript. In particular, defense lawyers generally advise their clients about what is occurring during trial, and thus may inform their clients of the subject of bench conferences and other proceedings in which the defendants do not directly participate, making clear the defendants' acquiescence to their absences.[8] In

---

[8] See, e.g., *Nesby v. State*, 310 Ga. ___, ___ (___ SE2d ___) (2021) (concluding that the defendant acquiesced to his absence from a bench

25

addition, defendants may be able to see things that may not be shown by the trial transcript, like a juror who was summoned to a bench conference immediately leaving the courtroom and not returning — a good indication that the conference involved the dismissal of that juror. Cf. *Zamora*, 291 Ga. at 519.

If not raised and resolved during trial, a claim that a defendant's right to be present was violated is normally raised in a motion for new trial, which allows the parties to supplement the

conference about the removal of prospective jurors for hardship in part because his "trial counsel testified at the hearing on the motion for new trial that, during the proceedings in this case, he discussed all the issues with [the defendant] that were raised with the court during the bench conferences, and the trial court expressly credited counsel's testimony"); *Parker v. State*, 220 Ga. App. 303, 312 (469 SE2d 410) (1996) (holding that Parker acquiesced to his absence from a brief hearing at which a juror was discussed based on the following: "Defense counsel testified [at the motion for new trial hearing] that since it was his normal policy to ensure the defendant's presence at all times, he would have informed Parker of what happened when he returned [from the colloquy with the trial court]. Parker did not contradict defense counsel's testimony. Accordingly, there was evidence upon which the trial court could conclude that defense counsel immediately informed Parker that the trial court requested and counsel agreed to waive his presence at the brief hearing. There is no evidence that Parker subsequently indicated any objection to the waiver [at trial]."). See also *Ramage v. State*, 314 Ga. App. 651, 654 (725 SE2d 791) (2012) (reciting as evidence pertinent to a determination of acquiescence that Ramage's trial counsel testified at the motion for new trial hearing that "every time the lawyer consented to the judge meeting privately with the jurors, the lawyer recalled counseling Ramage at the defense table with respect to at least some of the communications between the judge and the jury").

26

trial record at the hearing on the motion by calling the defendant's trial counsel, or other witnesses, to testify about what the defendant was told about the proceeding from which he was absent or by presenting other evidence about what the defendant could see and hear during the trial. That did not occur in this case, because Appellant raised his right-to-be-present claim for the first time on appeal.

In at least one case where such a claim was raised first on appeal, we have reviewed the existing record and concluded that it showed enough about what the defendant could see and hear for us to comfortably construe his failure to timely complain about his absence as acquiescence. See *Zamora*, 291 Ga. at 519-520 (finding acquiescence from a combination of the trial and motion-for-new-trial record, while noting that the defendant might have learned the subject of the bench conferences at issue "earlier from conversations with his trial counsel"). This Court appears never to have directly addressed, however, whether that is the proper practice in this situation. Upon reflection, we conclude for several reasons that

when a defendant raises a right-to-be-present claim for the first time on appeal, unless that claim can be easily rejected based on the existing record, the case should be remanded to the trial court for a hearing at which the parties have an opportunity to supplement the record with relevant evidence and after which the trial court may make factual findings and issue an order ruling on the claim, which may then be reviewed in a subsequent appeal.

First, as noted previously, acquiescence is a fact-specific issue that turns on how to interpret a defendant's silence after his absence from a proceeding. Trial judges are generally better situated than appellate courts to make such inferences in the first instance, particularly in a context where the trial judge's own practices, procedures, and observations of what occurred during the trial may be pertinent. Second, we should not lightly assume that defense counsel allowed his client's constitutional right to be present to be violated without the client's consent; rather, we would normally expect that if bench conferences or other proceedings to which the right applies happened without the defendant's presence, counsel

28

advised the defendant of his right to be present and of what occurred to ensure that the defendant acquiesced to his absence. See, e.g., *Parks v. State*, 275 Ga. 320, 325 (565 SE2d 447) (2002) ("Parks's attorney was present at all of [the challenged bench] conferences, had the opportunity to discuss each conference with Parks, and, in fact, stated that he was going to discuss the conferences with Parks.").[9]

Third, and relatedly, it would promote gamesmanship and create ethical concerns if defense counsel — having realized that the defendant did not participate in a bench conference or other proceeding at which he had a right to be present and that the trial transcript would not show acquiescence, even though a fuller record

---

[9] To be clear, given Justice McMillian's special concurrence, we are *not* holding today that there is in this context a presumption that defense counsel ensured their clients' acquiescence to violations of the right to be present, which (if unrebutted) could be relied on without more to prove such acquiescence. But we also should not presume that defense counsel performed their professional duties deficiently by allowing their clients' constitutional rights to be violated, even if they did not make as clear a record of their clients' waiver or acquiescence as they perhaps should. We believe that defense counsel in general perform more competently than the special concurrence suggests, so there is value in remanding to allow a record of their interactions with their clients to be created and the truth of the matter to be determined by actual evidence rather than presumptions.

could or would show acquiescence — could secure reversal of a conviction by not raising the issue until appeal, depriving the State of the opportunity to create that fuller and more truthful record. The potential for gamesmanship in this context would be particularly high, because under current Georgia law, if an appellate court determines that the defendant's right to be present was violated without his acquiescence or other waiver, prejudice is conclusively presumed and his convictions must be reversed.[10] That is so even

---

[10] Georgia law is unusual in applying this conclusive presumption of prejudice for an unwaived violation of a constitutional right to be present. The United States Supreme Court has held that a violation of the right to be present under the United States Constitution is subject to constitutional harmless error review. See *Rushen v. Spain*, 464 U.S. 114, 117-120 (104 SCt 453, 78 LE2d 267) (1983) (per curiam). And it appears that most — but not all — states that have addressed violations of the right to be present under their respective state Constitutions have likewise held that a violation is generally subject to harmless error review. See, e.g., *State v. Clary*, 270 P3d 88, 91-92 (Mont. 2012) (holding that a violation of the right to be present under the Montana Constitution is presumed harmful but subject to harmless error review, unless the violation constituted a "structural defect," in which case the presumption of harm is conclusive); *State v. Brown*, 552 SE2d 390, 398 (W. Va. 2001) (explaining that an unwaived violation of the right to be present under West Virginia law is subject to harmless error review). New York's highest court has held that the absence of the defendant during a material stage of his trial "presents an error of law mandating reversal even in the absence of objection, and that an inquiry into prejudice is inappropriate," *People v. Cain*, 556 NE2d 141, 143 (N.Y. 1990) (citations omitted), but also has held that a trial court's questioning of a juror in chambers without the defendant present

was not a material part of the trial, see *People v. Mullen*, 374 NE2d 369, 370-371 (N.Y. 1978).

For more than a century before Georgia's current Constitution was ratified in 1982, and for more than a decade thereafter, this Court and the Georgia Court of Appeals were inconsistent in our treatment of the "presumption" of prejudice flowing from various types of violations of the right to be present under our State's Constitution, with most of the cases on one side failing to acknowledge, much less distinguish legally or factually, the other line of cases. In many cases, our appellate courts treated the presumption of harm as conclusive, sometimes with an explanation and other times by just summarily reversing convictions after holding that the right to be present was violated. See, e.g., *Wade*, 12 Ga. at 29 (rejecting the contention that the defendant was not "injured" by a violation of his right to be present simply because "it was the *legal right* and *privilege of the defendant*" to be present and he had not waived his right (emphasis in original)); *Hopson v. State*, 116 Ga. 90, 92 (42 SE 412) (1902) ("To say that no injury results when it appears that what occurred in [the defendant's and his counsel's] absence was regular and legal would, in effect, practically do away with this great and important right, one element of which is to see to it that what does take place is in accord with good law and good practice."); *Rider v. State*, 195 Ga. 656, 660 (25 SE2d 304) (1943) (holding that "where the defendant is absent without knowledge of such a [jury] charge or recharge, and without any consent or waiver with reference thereto, it has been held that such procedure requires a new trial," regardless of whether what occurred in the defendant's absence was "'regular and legal'" (quoting *Hopson*)); *Seay v. State*, 111 Ga. App. 22, 25 (140 SE2d 283) (1965) (holding that a colloquy between the judge and the jury in the defendant's absence without a waiver was reversible error, "even though nothing erroneous occurred therein"); *Fictum v. State*, 188 Ga. App. 348, 349 (373 SE2d 54) (1988) (deciding that a violation of a defendant's right to be present during jury selection required reversal where he had not waived his right, without analyzing harm).

In numerous other cases during the same period, however, our appellate courts treated a violation of the right to be present as subject to harmless error analysis (or, put another way, as subject to rebuttal by the State of a presumption of prejudice). See, e.g., *Smith v. State*, 59 Ga. 513, 514-515 (1877) (concluding that reversal was not required when the trial court received the jury's verdict in the defendant's absence, because his absence "was merely an irregularity" and "no matter of substance was involved"); *Miller v. State*, 13 Ga. App. 440, 444 (79 SE 232) (1913) ("In considering the right of the accused

to be present at every stage of the trial, and to have his counsel present, we must not lose sight of the further principle, equally well established, that a new trial will not be granted on account of an error which manifestly caused no injury to the accused. . . . To warrant such action by a reviewing court, it must be manifest that the error was prejudicial in character."); *Williams v. State*, 150 Ga. 641, 644 (104 SE 776) (1920) ("It is certainly an important right of the accused in a criminal case, where his life and liberty are involved, to be present at all stages of the trial; but this can not mean that if anything at all is done in his absence a new trial is required."); *Thacker v. State*, 226 Ga. 170, 181 (173 SE2d 186) (1970) (citing *Miller* in holding that a violation of the right to be present was at most a "harmless irregularity"), vacated in part on other grounds, 408 U.S. 936 (92 SCt 2861, 33 LE2d 753) (1972); *Watkins v. State*, 237 Ga. 678, 681-682 (229 SE2d 465) (1976) (concluding a violation of a defendant's right to be present was harmless error); *Logan v. State*, 266 Ga. 566, 567 (468 SE2d 755) (1996) (holding that the trial court's communication with the jury outside of the defendant's presence was harmless error); *Hanifa v. State*, 269 Ga. 797, 807 (505 SE2d 731) (1998) (stating that "'[u]nquestionably the trial judge should not in any manner communicate with the jury about the case, in the absence of the accused and his counsel, pending the trial[,]'" and "'unless the character of the communication clearly shows that it could not have been prejudicial to the accused, the presumption of law would be that it was prejudicial'" (quoting *Miller*)).

By the late 1990s, Georgia courts began saying more consistently and squarely that violations of the Georgia Constitution's right to be present are not subject to harmless error analysis, albeit again usually ignoring the precedents to the contrary. See, e.g., *Goodroe v. State*, 224 Ga. App. 378, 380-381 (480 SE2d 378) (1997) ("[T]he Georgia Supreme Court has refused to apply a harmless error analysis to a criminal defendant's right to be present at a critical stage of the trial pursuant to . . . the Georgia Constitution."); *Holsey v. State*, 271 Ga. 856, 860 (524 SE2d 473) (1999) ("This Court has consistently considered the defendant's absence for a critical part of the trial as a defect not subject to harmless error analysis."); *Smith v. State*, 284 Ga. 599, 608-609 (669 SE2d 98) (2008) ("Georgia law treats the right to be present differently [than federal constitutional law]. Under our existing case law, which neither side has asked us to revisit here, denial of the right to be present guaranteed by the Georgia Constitution is not subject to harmless error review on direct appeal. Instead, a violation is presumed to be prejudicial. Thus, absent a valid waiver, violation of the right to be present triggers reversal and remand for a new trial whenever the issue is properly raised on direct appeal." (footnotes omitted));

when, as in this case, the defendant rather obviously could not

establish any actual prejudice.[11] We should at least be confident that

---

*Ward*, 288 Ga. at 646-647 ("This Court has consistently ruled that the 'denial of the right to be present guaranteed by the Georgia Constitution is not subject to harmless error review on direct appeal.'" (quoting *Smith*, 284 Ga. at 609)); *Howard*, 307 Ga. at 21 ("'If not waived by the defendant, a direct violation of the right to be present is presumed prejudicial and requires a new trial.'" (citation omitted)).

Yet even in the past two decades, there has been some inconsistency, as this Court and the Court of Appeals have continued to treat one type of right-to-be-present violation — communications between trial courts and jurors without the defendant present — as subject to a rebuttable presumption of prejudice. See, e.g., *Carter v. State*, 273 Ga. 428, 429-430 (541 SE2d 366) (2001) (reversing under the *Hanifa* test because "[t]he character of the communication in the present case does not show that it could not have been prejudicial to Carter"); *Fuller v. State*, 277 Ga. 505, 506 (591 SE2d 782) (2004) (quoting *Hanifa* and concluding that one of two communications was not "innocuous"); *Reid v. State*, 319 Ga. App. 782, 784-785 (738 SE2d 624) (2013) ("[E]ven if the trial court erred when it communicated with the jury outside the presence of Reid and his counsel, the error was harmless because Reid has not shown that the trial court's response hastened the verdict or caused a juror to yield his or her convictions.").

It is not clear why Georgia law should be an outlier on this issue, why this State's case law developed as it did, or whether the automatic-reversal position on which we seem to have settled (for the most part) fairly recently is the correct rule for all cases, for certain categories of cases, or for no cases. We would be amenable to reconsidering our recent holdings in a case in which the issue is fully briefed; the parties have not done so in this case thus far, but we do not foreclose their doing so on remand or in a subsequent appeal.

[11] The bench conferences at issue here all concerned removal of prospective jurors for cause or hardship. With or without Appellant's participation in the bench conferences, even if the trial court erred in removing all of those prospective jurors, the errors would be deemed harmless, because Appellant makes no claim that the 12 jurors who ultimately tried his case were in any way biased or incompetent. See *Trim v. Shepard*, 300 Ga. 176, 179 (794 SE2d 114) (2016) ("[E]ven if a trial court abused its discretion in striking a

before we order a new trial in a criminal case, an actual, unrelinquished violation of the right to be present occurred, by allowing the State an opportunity to develop a full record on the issue.[12]

Notably, and commendably, Appellant's counsel here acknowledges that a remand would be appropriate to develop the record on the issue of acquiescence. And notably, when faced with a similar situation, the Court of Appeals remanded the case to the trial court "with direction to conduct a hearing, giving both sides adequate opportunity to address the issue of acquiescence." *Russell v. State*, 230 Ga. App. 546, 548 (497 SE2d 36) (1998). Cf. *Ramage v.*

---

prospective juror for cause, 'the erroneous allowing of a challenge for cause (ordinarily) affords no ground of complaint if a competent and unbiased jury is finally selected.'" (citation omitted)). See also *Wells v. State*, 261 Ga. 282, 282 (404 SE2d 106) (1991) ("A party to a lawsuit has no vested interest in having any particular juror to serve; he is entitled only to a legal and impartial jury." (citation and punctuation omitted)).

[12] During the first bench conference related to Juror Q. P., Appellant's trial counsel mentioned Appellant's writing down the names of prospective jurors whom he knew, suggesting some interaction between Appellant and his counsel during the jury selection process; there also would have been opportunities throughout the process, including during the 26-minute recess before the silent strikes, for them to discuss the bench conferences and what had occurred during them. Whether and what discussions actually occurred is, of course, a key matter to be determined on remand.

34

*State*, 314 Ga. App. 651, 654-655 (725 SE2d 791) (2012) (remanding for the trial court to "find the pertinent facts and then to apply the correct legal standard to resolve the question of [Ramage's] waiver [of his right to be present]," where the trial transcript was silent on the issue and the other evidence in the record was conflicting and ambiguous).

For these reasons, although we affirm the sufficiency of the evidence supporting Appellant's convictions, we vacate the trial court's judgment in part and remand the case to that court to hold a hearing at which Appellant may raise his right-to-be-present claim and the parties may present evidence and argument on the claim, after which the court shall enter an order ruling on the claim, which may then be appealed to this Court.

*Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur, except McMillian, J., who concurs specially in Division 2 (c).*

MCMILLIAN, Justice, concurring specially.

Although I agree that the trial court's judgment must be vacated in part and remanded to permit the parties to develop the record on Champ's right-to-be-present claim, which was raised for the first time on appeal, I disagree with one of the reasons posited by the majority for remand: that we "normally expect that if bench conferences or other proceedings to which the right applies happened without the defendant's presence, counsel advised the defendant of his right to be present and of what occurred to ensure that the defendant acquiesced to his absence."

First, when remand is required for further factual development, this Court does not generally tell the parties and the trial court what it expects to find. Indeed, notwithstanding the majority's stated expectations, it is not uncommon that when raised, a criminal defendant's constitutional right to be present is found to be violated such that a new trial is required. See, e.g., *Sammons v. State*, 279 Ga. 386, 388 (2) (612 SE2d 785) (2005) (after juror was

36

removed without defendant's consent or acquiescence and defendant objected to the dismissal, counsel said he would discuss it with her but did not); *Pennie v. State*, 271 Ga. 419, 422 (2) (520 SE2d 448) (1999) (defense counsel may not waive client's right to be present after trial illegally proceeded in defendant's absence); *Brooks v. State*, 271 Ga. 456, 457 (2) (519 SE2d 907) (1999) (Georgia appellate courts "have reversed numerous cases based upon the defendant's absence"); *Gillespie v. State*, 333 Ga. App. 565, 568 (1) (a) (774 SE2d 255) (2015) (trial counsel testified that defendant was not present at bench conferences; he did not believe he told his client of the right to be present; never specifically thought about or researched his client's right to be present; could not recall ever advising a client of the right to be present; and could not recall telling defendant what occurred at bench conferences). We analyze whether a defendant has waived his right to be present precisely because we cannot assume that he acquiesced, so it would be counterproductive to assume that counsel facilitated a defendant's acquiescence.

Second, careful counsel may choose to put on the record in open

court what occurred at a bench conference not attended by the defendant or make clear whether the defendant was waiving his right to be present at bench conferences. See, e.g., *Heath v. State*, 349 Ga. App. 84, 91 (3) (825 SE2d 474) (2019) ("Third, Heath's counsel explicitly put on the record [in open court] that 'at the conference (they) had agreed to strike for cause jurors number 3 and 10.'"); *Ramirez v. State*, 345 Ga. App. 611, 616 (2) (814 SE2d 751) (2018) (defense counsel stated on the record that he explained the right to be present and that his client agreed to discussing the content of the bench conferences at counsel's table); *Johnson v. State*, 347 Ga. App. 831, 839 (1) (b) (821 SE2d 76) (2018) (defense counsel stated on the record that defendant did not waive his right to be present by not being present at bench conferences); *Williamson v. State*, 207 Ga. App. 565, 566 (1) (428 SE2d 628) (1993) (defense counsel announced on the record that defendant waived his right to be present). And in the interest of avoiding a re-trial, we have encouraged the trial court and prosecutors to put on the record what occurred at bench conferences or confirm that the defendant waived

38

the right to be present. See *Sammons*, 279 Ga. at 388 (2) n.12 ("Prosecutors are reminded that they share the duty to ensure a fair trial and that if proceedings take place outside the presence of the defendant, the State may alert the trial court of the need to allow the defendant time to discuss the issue with counsel and to permit defendant to place an express waiver on the record."). See also *Allen v. State*, 297 Ga. 702, 705 (4) (777 SE2d 680) (2015) (trial court noted on the record that defense counsel explained what was being said at bench conferences and that defendant waived the right to be present).

Notably, Champ was represented during the hearing on the motion for new trial by two successive attorneys, neither of whom brought up Champ's right to be present at bench conferences. Thus, the silence of the record on whether Champ was advised of his right to be present suggests the opposite of the majority's reasoning — that no one was focusing on that issue until current appellate counsel raised it — rather than supporting a "normal" expectation that defense counsel advised his client of his right. In any event, we

39

should not assume that Champ's trial and motion-for-new-trial counsel were aware of courtroom interactions that support acquiescence or that they were heedless of his right to be present. Instead, as the majority aptly explains: "there is value in remanding to allow a record of their interactions with their clients to be created and the truth of the matter to be determined by actual evidence rather than presumptions."[13]

Although I am unconvinced that remand is supported by this assumption, I am persuaded by the other two reasons that the majority relies upon. The majority first points out that whether a defendant has waived his or her right to be present is fact-specific, and because trial judges are in a better position to assess facts in the first instance than we are, supplementing the record in the trial court will better inform our analysis. I also agree that if we allow right-to-be- present claims to be raised for the first time on appeal

---

[13] I agree with the majority that the Court is not presuming on a silent record that defense counsel obtained his client's acquiescence, notwithstanding the majority's somewhat contradictory statements about its expectations of defense counsel in this context.

without a remand for development of the record, there is a potential for gamesmanship by unethical defense counsel, who could purposely inject reversible error into the trial in the event that there is a conviction. In my view, these reasons, along with the concession by both Champ and the State that remand would be appropriate here, are sufficient to support a remand.

Finally, and on a separate issue, I question the necessity of footnote 10. As explained by the majority, "under current Georgia law, if an appellate court determines that the defendant's right to be present was violated without his acquiescence or other waiver, prejudice is conclusively presumed and his convictions must be reversed." I agree with this and also with the acknowledgment that Georgia is an outlier among state and federal courts on this issue, where other jurisdictions generally apply a harmless-error review. But no party has asked us to revisit the presumption of prejudice in right-to-be-present claims. Thus, even though the balance of the footnote, with its long string cites to inconsistent Georgia cases on this issue, is academically interesting and may be helpful to future

41

litigants who want to challenge the presumption, at the end of the day, it is only dicta, so I would not include it in the majority opinion.

For these reasons, I concur in the judgment only in Division 2 (c) of the majority opinion.

DECIDED FEBRUARY 15, 2021.
Murder. Ben Hill Superior Court. Before Judge Hughes.
*Brian Steel*, for appellant.
*Bradford L. Rigby, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Eric C. Peters, Assistant Attorney General*, for appellee.