**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 17, 2021**

# In the Court of Appeals of Georgia

A21A0492. THOMAS v. THE STATE.

MILLER, Presiding Judge.

This is the second appearance of Nyron Thomas's case before this Court. A jury convicted Nyron Thomas of aggravated assault with a deadly weapon (OCGA § 16-5-21), possession of a firearm during commission of a felony (OCGA § 16-11-106), and possession of a firearm by a convicted felon (OCGA § 16-11-131). *State v. Thomas*, 350 Ga. App. 763 (830 SE2d 296) (2019). Thomas appeals from the trial court's denial of his motion for new trial, arguing that the trial court failed to ensure that he was present during several bench conferences which were critical stages of the proceeding. For the reasons that follow, we conclude that Thomas is not entitled to a new trial on this ground and therefore affirm Thomas's convictions and sentence.

In the previous appeal, we summarized the facts as follows:

The record shows that the charges against Thomas arose from an altercation between Thomas and [Shinnara] Gee on October 9, 2014. The two men began arguing, and at some point during the encounter, Thomas's gun discharged. Thomas then chased Gee around a corner and fired his weapon again, but the second shot did not make contact with Gee. The medical examiner testified that Gee was shot only once, and the fatal shot entered Gee's arm and ricocheted into his torso. Gee died from the injuries he sustained to his internal organs when the bullet lodged in his abdominal cavity. Thomas testified in his own defense at trial and claimed he did not intend to shoot Gee. He raised the affirmative defenses of self-defense, accident, and justification.

Thomas was charged by indictment for murder, two counts of felony murder, aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Specifically, the indictment alleged that Thomas assaulted Gee "by shooting him with a handgun, the same being a deadly weapon." See OCGA § 16-5-21 (a) (2) ("A person commits the offense of aggravated assault when he or she assaults … [w]ith a deadly weapon… .").

The jury returned a verdict finding Thomas not guilty of murder, felony murder, and the lesser included offense of voluntary manslaughter. The jury found Thomas guilty of aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. The trial court sentenced Thomas to twenty years to serve for aggravated assault (Count 4); five

2

years to serve for possession of a firearm during the commission of a felony (consecutive to Count 4); and five years to serve for possession of a firearm by a convicted felon (consecutive to Count 4 and suspended).

In his amended motion for a new trial, Thomas asserted error in the trial court's failure to limit its jury instruction on aggravated assault with a deadly weapon to the method charged in the indictment. The trial court agreed that its charge was erroneous and granted a new trial on this basis.

Id. at 764.

In the previous appeal, the State argued that the trial court erred in granting Thomas a new trial based on an erroneous jury charge. Id. at 765 (1). We concluded that the trial court erred in that regard, and we reversed the trial court's order and remanded the case for the trial court to consider the remaining grounds asserted in Thomas's motion for new trial. Id. at 768 (2). On remand, the trial court entered an order denying Thomas's motion for new trial as to the other grounds in his motion. He then filed this appeal.

In his sole enumeration of error, Thomas contends that his constitutional rights were violated because he was excluded from bench conferences in three instances: (1) during jury selection, when the trial court and his trial counsel spoke about

3

excusing a juror; (2) during the first day of trial, when the trial court sustained his trial counsel's objection to the State's attempt to introduce still images from a surveillance video; and (3) during the second day of trial, when the trial court told the State that it could not introduce evidence of a lineup because Thomas's identity as the shooter was not in dispute.[1] We disagree and conclude that the trial court did not violate Thomas's constitutional rights.

> Embodied within the constitutional right to the courts is a criminal defendant's right to be present and see and hear all the proceedings which are had against him on the trial before the Court. Violations of this due process right are presumed prejudicial, and, absent a waiver by the defendant, require a new trial. . . . The right to be present attaches at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure. Thus, a "critical stage" of a criminal proceeding is defined as one in which the defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way. Proceedings during which the

---

[1] The State did not file a brief in this appeal, in violation of Court Rule 23 (b). ("Appellees are encouraged but, other than the State in a criminal case, are not required to file a brief. A brief shall be filed by the State when it is the appellee in the appeal of a criminal case."). "Although we do not issue a finding of contempt, we note that the district attorney's failure to adhere to this rule in the future may subject him to a finding of contempt." *Bostic v. State*, 341 Ga. App. 402, 402 n.1 (801 SE2d 89) (2017).

jury is selected or modified, for example, are a critical stage at which the right to be present attaches.

(Citations and punctuation omitted.) *Brewner v. State*, 302 Ga. 6, 9-10 (II) (804 SE2d 94) (2017).

Thomas does not appear to have raised these claims before the trial court, as neither his motion for new trial nor his amended motion for new trial raises this issue, the trial court's post-remand order denying Thomas's motion for new trial on all remaining grounds does not address it, and the record does not include a transcript of the post-remand hearing. As discussed more fully below, the resolution of a right-to-be-present claim requires a fact-intensive inquiry as to whether the defendant acquiesced to his absence, which typically must be determined by the trial court before it can be reviewed by an appellate court. See *Champ v. State*, ___ Ga. ___, (2) (c) (854 SE2d 706) (2021). However, when a defendant raises a right-to-be-present claim that "can be easily rejected based on the existing record," the appellate court may address it for the first time on appeal. Id. In this case, Thomas's claims can be easily decided based on the record, so we will address them here.

1. First, as to the bench conference during jury selection, the transcript reveals that when the trial court asked prospective jurors to indicate whether they believed

5

their service as a juror might be affected by their experience with a close friend or family member's conviction of a crime, Juror No. 4 responded in the affirmative. The trial court directed Juror No. 4 to speak to the sheriff then called the attorneys to the bench and held a bench conference without the court reporter. Later, after all the prospective jurors had left the courtroom, the trial court summarized the discussion for the record:

> THE COURT: [T]he record will reflect that during the course of the voir dire, Juror No. 4 was tearing up and wiping her eyes. The Court asked her to go speak to the deputy. She spoke to the deputy and indicated that she was tearing up and crying because she had a son who's incarcerated.
>
> Counsel approached the bench and, at that time, were given the choice of having the juror remain as a juror or excusing her. By agreement, counsel for the State and counsel for defense agreed that Juror No. 4 would be excused. She was, therefore, directed to return to the seventh floor and excused at that point. If the Court has inaccurately stated anything that occurred for the record, please say so now.
>
> On behalf of the State?
>
> MR. FAUCETTE: No, Your Honor.
>
> THE COURT: On behalf of the defense?

MR. BOWLES: No, Your Honor.

It is clear that jury selection is a critical stage of the proceedings, and we readily conclude that Thomas had a right to be present at this bench conference. See *Champ*, supra, ___ Ga. at __ (2) (b) (holding that a defendant has the right to be present at a bench conference during which a prospective juror is discussed and removed). Thus, we must now consider whether Thomas relinquished his right to be present. Id. at ___ (2) (c) ; *Green v. State*, __ Ga. App. __ , 436 (3) (856 SE2d 427) (2021).

> [T]he right to be present belongs to the defendant, and he is free to relinquish it if he so chooses. The right to be present is waived if the defendant personally waives it in court; if counsel waives it at the defendant's express direction; if counsel waives it in open court while the defendant is present; or if counsel waives it and the defendant subsequently acquiesces in the waiver. As our precedents explain, acquiescence, which is a tacit consent to acts or conditions, may occur when counsel makes no objection and a defendant remains silent after he or she is made aware of the proceedings occurring in his or her absence. Acquiescence implies a knowledge of those things which are acquiesced in, as one can not acquiesce in a wrong while ignorant that it has been committed.

(Citations and punctuation omitted.) *Burney v. State*, 299 Ga. 813, 820 (3) (b) (792 SE2d 354) (2016).

Here, Thomas was present in the courtroom during voir dire and was therefore able to observe Juror No. 4 indicate that her service as a juror might be affected by her background experience. Thomas was then able to observe the trial court directing Juror No. 4 to see the sheriff, and he was able to see counsel approach the bench for a conference. Later, Thomas was able to hear the trial court's summary of why Juror No. 4 had been excused. Finally, once the jury was selected, the trial court asked both the prosecutor and defense counsel, "[I]s this your jury?" and "Is there anything that requires the presence of the remaining jurors[?]" Neither Thomas nor his attorney raised any objection to either the jurors selected or the jury selection process. Therefore, by remaining silent, Thomas acquiesced to the waiver of his right to be present at this bench conference. See *Fordham v. State*, 352 Ga. App. 520, 523-524 (1) (835 SE2d 360) (2019) (defendant acquiesced to his exclusion from bench conferences where he was present during jury selection and observed potential jurors indicate that they could not remain impartial and their subsequent dismissal after further questioning by the court and counsel at the bench); see also *Bernier v. State*, 354 Ga. App. 339, 349-350 (4) (840 SE2d 748) (2020) (defendant acquiesced to the

8

waiver of his presence at bench conferences where he "saw jurors being questioned and on two occasions excused, and voiced no objection[.]").

2. As for the second bench conference identified by Thomas, the record demonstrates that, after the State moved to tender into evidence still images taken from a surveillance video feed, Thomas's trial counsel objected and asked the trial court for permission to approach the bench. The trial court and the attorneys then held a bench conference without the court reporter. Later, after the jury was excused for the day, the trial court summarized the conference:

> The record will reflect that the exhibits tendered were still photographs purportedly from the camera – and we have the video of the camera that has been admitted. The [c]ourt declined to admit the still photographs without someone who can identify who it is that is depicted in those stills. Simply because, consistent with the objection, it's the [c]ourt's view that the stills taken out of context, if you don't know what their significance is, may have a tendency to distort the jury's determination of what the video itself shows.

Thus, the objection raised by Thomas's trial counsel was sustained, and the proffered images were not submitted into evidence.

"[B]ench conferences pertaining to purely legal issues, such as the admissibility of evidence or jury instructions, ordinarily do not implicate the right to be present,"

9

*Brewner*, supra, 302 Ga. at 10 (II). Accordingly, Thomas's absence from this bench conference does not give rise to a right-to-be-present claim. Moreover, neither Thomas nor his attorney indicated that they had any concerns with the trial court's handling of the issue. Consequently, with respect to this bench conference, we can easily reject Thomas's right-to-be-present claim and conclude that he acquiesced to his absence from this bench conference. See *Champ*, supra, ___ Ga. at ___ (2) (c).

3. Finally, turning to the third bench conference identified by Thomas, we note that, at the end of the first day of trial, the trial court asked Thomas whether he wished for the lawyers to approach the bench for bench conferences or for the court to send the jury out of the courtroom so that Thomas could hear the discussion in "realtime." Thomas responded that he would like to hear the conversation in "realtime," and the trial court assured him that "there will be no approaching the bench," and the jury would be sent out of the courtroom instead. Nevertheless, on the second day of trial, the trial court asked the lawyers to approach the bench for a conference. The court later apologized to Thomas, stating:

> Mr. Thomas, on yesterday you indicated that you did not want the attorneys approaching the bench. I apologize. The reason I had them come up, I forgot that you told me that. But I had them come up so that I could tell the State they weren't going to show the lineup since

10

nobody's fighting about your identity. But that won't happen again. The trial court then asked if there were any objections, and both the prosecutor and defense counsel answered that they had none.

Although Thomas now contends that this third bench conference was a critical stage of the trial for which he had a right to be present because the attorneys and the trial court were discussing what evidence was relevant to his case and what defenses he was raising, the record is clear that the trial court was not making a determination about his defenses during the bench conference. Instead, the trial court was making a determination as to the admissibility of evidence, which does not tread upon a defendant's right to be present See *Fortson v. State*, 272 Ga. 457, 458 (1) (532 SE2d 102) (2000) ("A critical stage in a criminal prosecution is one in which the defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way.") (citation omitted); see also *Brewner*, supra 302 Ga. at 10 (II) ("[B]ench conferences pertaining to purely legal issues, such as the admissibility of evidence or jury instructions, ordinarily do not implicate the right to be present[.]"). Accordingly, this bench conference did not implicate Thomas's right to be present, and his absence from the conference did not amount to a denial of that right.

11

For the foregoing reasons, we conclude that the trial court did not violate Thomas's right to be present at critical stages of the proceedings, and we therefore affirm Thomas's conviction and sentence.

*Judgment affirmed. Hodges and Pipkin, JJ., concur.*